W. DOUGLAS SPRAGUE (Cal. Bar No. 202121)
DAVID JUNG (Cal. Bar No. 314508)
RAINA BHATT (Cal. Bar No. 319435)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA  94105-2533

YASMIN BEST (Cal. Bar No. 235959)
FAEGRE DRINKER BIDDLE & REATH, LLP
1800 Century Park East, Ste. 1500
Los Angeles, California 90067

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> JESSICA RICHMAN and ZACHARY APTE, <br><br> Defendants. | Case No. 21-CV-01911-CRB <br><br> **SPECIAL APPEARANCE BY COVINGTON & BURLING LLP AND FAEGRE DRINKER BIDDLE & REATH, LLP IN OPPOSITION TO SECURITIES AND EXCHANGE COMMISSION'S MOTION TO SERVE DEFENDANTS BY ALTERNATIVE MEANS** <br><br> Courtroom:  6, 17th Floor <br> Date:        July 16, 2021 <br> Time:        10:00 a.m. |

COVINGTON & BURLING, LLP ("Covington") and FAEGRE DRINKER BIDDLE & REATH, LLP ("Faegre") respectfully submit this special appearance in opposition to the Securities and Exchange Commission's Motion to Serve Defendants by Alternative Means.  *See* Dkt. No. 13.  The SEC has not made a sufficient attempt to effect service under Federal Rule of Civil Procedure ("Rule") 4(f), nor has it shown the type of necessity or urgency necessary to justify its request for alternative service.  The Court should exercise its discretion and deny the SEC's motion.

# I.    BACKGROUND

Drs. Jessica Richman and Zachary Apte are the co-founders and former co-CEOs of uBiome, a microbial genomics science company.  On April 25, 2019, federal law enforcement officers conducted a search of uBiome's San Francisco headquarters.  On June 7, 2019, the SEC issued a document request to uBiome.  On July 3, 2019, the SEC issued document preservation requests to Drs. Richman and Apte, and then subsequently served document and testimonial subpoenas on July 31, 2019 and January 15, 2020, respectively.  During the course of the SEC's investigation, Dr. Apte was represented by counsel at Covington and counsel at another firm.  Dr. Richman was represented by other counsel.

Drs. Richman and Apte wed in late 2019 and made plans to honeymoon in Europe.  Before their planned trip, Dr. Richman became ill and was hospitalized.  Drs. Richman and Apte embarked for Europe in July 2020.  After flying to Europe, Dr. Richman's health condition deteriorated, and she suffered from a myriad of persistent and debilitating health issues.  *See* Declaration of Joel Hammerman ("Hammerman Decl.") in support of Administrative Motion to File Under Seal, filed June 24, 2021, Exhibit 1.  Dr. Richman continues to receive care for those conditions.  *Id.*  Drs. Richman and Apte took up residence in Germany, where Dr. Apte serves as Dr. Richman's full-time caretaker.  *Id.*

The SEC's investigation continued throughout 2020 while Drs. Richman and Apte remained abroad.  In early January 2021, the SEC issued "Wells Notices" to Dr. Richman and Dr. Apte, advising them that the SEC staff had made a preliminary determination to recommend that the Commission file charges against them.  *See* Dkt. No. 16, ¶¶ 6, 11.  The SEC filed its lawsuit months later, on March 18, 2021, the same day the Department of Justice obtained an indictment against both defendants.[1]

After the SEC filed its action, SEC counsel contacted the attorneys who had represented Dr. Richman and Dr. Apte in connection with the agency's investigation to ask whether the defendants

---

[1]  Both agencies announced their coordinated charges in synchronized press releases on March 18, 2021. *See uBiome Co-Founders Charged With Federal Securities, Health Care Fraud Conspiracies,* United States Department of Justice (March 18, 2021), www.justice.gov/usao-ndca/pr/ubiome-co-founders-charged-federal-securities-health-care-fraud-conspiracies; and *SEC Charges Co-Founders of San Francisco Biotech Company with $60 Million Fraud*, United States Securities and Exchange Commission (March 18, 2021), www.sec.gov/litigation/litreleases/2021/lr25056.htm (both last accessed June 23, 2021).

SPECIAL APPEARANCE BY COVINGTON & BURLING LLP AND FAEGRE DRINKER BIDDLE & REATH, LLP IN OPPOSITION TO SECURITIES AND EXCHANGE COMMISSION'S MOTION TO SERVE DEFENDANTS BY ALTERNATIVE MEANS

would waive service of the SEC's complaint.  Dr. Apte's counsel advised the SEC that if Dr. Apte

elected to waive service, that would be communicated to the SEC.  Dkt. No. 14, ¶ 6.  The attorney who

had previously represented Dr. Richman advised the SEC that she no longer represented Dr. Richman.

The SEC then emailed Dr. Richman's newly retained counsel who advised the SEC that if Dr. Richman

elected to waive service, that would be communicated to the SEC.  *Id.*, ¶¶ 7-8.  According to the SEC, it

has since unsuccessfully attempted to serve Dr. Richman and Dr. Apte pursuant to the Hague

Convention.  *See generally* Dkt. No. 13.

## II.   LEGAL STANDARD

"Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant."  *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 350 (1999).  Accordingly, a court ordinarily may not exercise power over parties named as

defendants in the absence of appropriate service.  *Id.*; *see Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,

484 U.S. 97, 104, (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the

procedural requirement of service of summons must be satisfied.").  The procedures for effectuating

service of process in a federal civil action are set forth in Rule 4.  *See* Fed. R. Civ. P. 4.  Subsection (f)

sets forth the rules for serving individuals located in a foreign country:

> (f)   SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY.  Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> (1)   by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2)   if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> (A)   as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B)   as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> C)   unless prohibited by the foreign country's law, by:
>
> (i)   delivering a copy of the summons and of the complaint to the individual personally; or

3

1
2

                (ii)    using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

3

        (3)   by other means not prohibited by international agreement, as the court orders.

4

Fed. R. Civ. P. 4(f).

5

## III.   DISCUSSION

6

      Directing service on Drs. Richman and Apte through alternate means is not warranted or justified

7

under present circumstances.  First, by its own representations, the SEC has not attempted service on

8

Drs. Apte or Richman that is reasonably calculated to comply with Rule 4.  Second, the SEC has a

9

reasonable method of service available via letters rogatory, which it has thus far opted not to pursue.

10

Finally, the SEC has failed to identify any necessity or urgency that makes alternative service through

11

Rule 4(f)(3) appropriate.

12

### A.    The SEC Has Yet To Sufficiently Attempt Service

13

      As the SEC acknowledges, although the United States and Germany are both parties to the

14

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and

15

Commercial Matters, SEC actions to enforce U.S. securities law are not considered civil or commercial

16

under German law.  *See* Dkt. Nos. 14  ¶ 3, 14-6 (Ex. I).  Importantly, this aspect of German law was

17

known to the SEC long before it attempted to serve the defendants.[2]  Still, this was the only course of

18

action pursued by the SEC prior to filing this motion.  In effect, the SEC has yet to attempt a method of

19

service that is available under international law and is reasonably calculated to serve the defendants.

20

### B.    Properly Executed Letters Rogatory Are A Reasonable Method of Service

21

      Despite knowing the Hague Convention was not a viable method of service, the SEC argues that

22

the Court should allow it to forgo any of the other enumerated forms of service because these methods

23

24

[2]  For example, in June 2012, Germany authorities refused to serve an SEC complaint alleging Foreign

25

Corrupt Practices Act violations against former executives of Siemens AG for the same exact reason Germany declined to serve Drs. Apte and Richman in this case; namely, because SEC actions to enforce

26

U.S. securities law are not considered civil or commercial under German law.  *See* C.M. Matthews, *SEC to Serve Former Siemens Execs through Newspaper in FCPA Case*, The Wall Street Journal (June 20,

27

2012), www.wsj.com/articles/BL-CCB-6611 (last accessed June 23, 2021); *see also* Memorandum in support of Motion for Service by Publication, *SEC v. Sharef*, No. 11-cv-09073-SAS (S.D.N.Y.), at Dkt.

28

No. 7.

prescribed under international law would be, according to the SEC, too burdensome and "impractical." Dkt. No. 13 at 5. But the SEC has failed to identify any reason specific to this matter which makes that process unavailable. For example, while the SEC acknowledges that letters rogatory "may be available," it speculates without support that they "may not work." *Id.* Speculation that a method "may not work" is not a sufficient reason to justify alternative service. Further, the SEC dismisses the letters rogatory process as too slow, which it argues would cause "substantial delay and deleterious effect." *Id.* But the SEC offers no meaningful evidence to support its argument that Germany is unamenable to service via letters rogatory or that this delay would be substantial. Rather, the SEC rests its argument on the assertion that Drs. Apte and Richman have transferred money over an almost year-long period to the country in which they are presently living and must pay expenses. The SEC provides no evidence whatsoever that the transfer of funds for use in Germany has had a "deleterious effect," or that this effect would be remedied at all by the Court's grant of alternative service.

### C.    Alternative Service Is Not Warranted

The SEC's only argument in favor of alternative service under Rule 4(f)(3) is efficiency, but this is insufficient to justify granting its motion. The Court should use its discretion and afford Rule 4(f)(3) alternative service based on necessity, not expediency. As the Ninth Circuit explained in *Rio Properties, Inc. v. Rio Int'l Interlink*, the advisory committee notes to Rule 4 suggest that subsection (f)(3)'s alternative service may be appropriate in "cases of 'urgency.'" 284 F.3d 1007, 1015 (9th Cir. 2002). The SEC must "demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention." *Id.* at 1017. There is no evidence in the record to support that conclusion.

The SEC argues that immediate service is necessary because Dr. Richman and Dr. Apte have transferred funds from the United States to Germany, where they currently reside. The SEC offers no facts to suggest that the use of money in Germany by individuals living in Germany is suspicious, problematic, or bears on the issue of service at all. The SEC's reliance on *Products & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-cv-669 (YGR) (N.D. Cal., July 21, 2016) is thus misplaced. In that case, the court ordered Rule 4(f)(3) service for a single defendant—while the plaintiff pursued Hague Convention service on the remaining defendants—because the defendant was decommissioning (*i.e.*, dissolving) corporations, including a corporate entity separately named as a defendant in the

lawsuit. *See id.* at Dkt. No. 75 at 2; Dkt. No. 82.[3]  In contrast, here the SEC alleges no more than that funds have been transferred to a country in which Dr. Apte and Dr. Richman are currently residing while Dr. Richman suffers from a serious illness that requires Dr. Apte to act as her caretaker.

Moreover, the SEC's own actions demonstrate a lack of urgency.  The SEC began its investigation of this matter more than two years ago.  In January 2021, the SEC advised Dr. Richman and Dr. Apte that it intended to file charges against them—approximately six months after they had already arrived in Germany.  The SEC then waited to file its complaint in coordination with charges brought by the Department of Justice months later.  Then, rather than promptly seeking to effectuate service through letters rogatory, the SEC sought service through the Hague Convention with knowledge and/or reason to know that German authorities would reject their requests in light of German precedent declining to provide service of SEC actions.  *See* Memorandum in support of Motion for Service by Publication, *SEC v. Sharef*, No. 11-cv-09073-SAS (S.D.N.Y.) at Dkt. No. 7.  And yet, despite the length of its multi-year investigation and filing decision, the SEC now asks the Court to find urgency for alternative service when another statutorily authorized manner of service still exists.

The ability to request service "by other means" does not provide plaintiffs an unfettered license to treat foreign litigants' prospective domestic counsel as compulsory agents to receive process.  Rule 4(f)(3) does not expressly identify a defendant's domestic counsel as a substitute for other means specifically enumerated in the Rule.  *See* Fed. R. Civ. P. 4(f)(3).  In *Rio Properties*, the Ninth Circuit held that "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief' . . . . [but] merely one means among several which enables service of process on an international defendant." 284 F.3d at 1015.  That maxim, however, does not yield the conclusion that all conceivable methods of service that the Rule may allow are themselves equal and/or proper regardless of the factual circumstances of an individual case.  To the contrary, while Rule 4(f)(3) may allow alternative methods of service, a district court must exercise "sound discretion" when evaluating a specific service method to be used.  *Id.* at 1016.  Despite the ample discretion afforded trial courts under Rule 4(f), the Rule

---

[3]  The district court further noted that Axus Stationary's counsel had already filed an appearance in the case.  *Id.*

tellingly does not expressly identify a defendant's domestic counsel as a substitute for other methodologies specifically enumerated in the Rule.  This is understandable; a contrary approach would require counsel not authorized by his/her clients to accept service on their behalf nonetheless to serve as an unauthorized process agent, causing potential and avoidable strain to the attorney-client relationship.[4]

It is a long-held and accepted principle that a plaintiff cannot bypass the enumerated methods of service set forth in Rule 4 simply by serving a complaint on a defendant's prospective counsel.  *See, e.g.*, *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990) ("Since service of process on an attorney not authorized to accept service for his client is ineffective, . . . delivery was not sufficient to effect service on [defendant].") (citations omitted); *Schultz v. Schultz*, 436 F.2d 635, 639 (7th Cir. 1971) ("Thus, the fact that Axel was defendant's attorney in an unrelated action furnishes no basis for the validation of the service of process on him as such. The question remains as to whether he was defendant's agent, authorized by appointment to receive service of process in the instant case."); *Schwarz v. Thomas*, 222 F.2d 305 (D.C. Cir. 1955) (attorney representing defendant in another litigation has no authority to accept service of process in a separate suit).  Rule 4(f)(3) does not provide differently.  Individuals who reside overseas should be able to retain counsel of their choice without the risk that the scope of that representation will expand to include accepting unauthorized service of process because of an adversary's desire for expediency.

---

[4] This is particularly important where, as here, there are parallel civil and criminal proceedings. Criminal defendants have a Sixth Amendment right to the counsel of their choice, and the attorney-client relationship is of paramount importance in cases involving criminal charges.  Requiring defendants' criminal counsel to accept service of civil complaints without authorization has the potential to interfere with the attorney-client relationship and, in the process, weaken defendants' Constitutional rights.

IV.     **CONCLUSION**

For these reasons, Covington and Faegre respectfully request that the Court deny the SEC's motion to serve Drs. Apte and Richman through the alternative means of ordering Covington and Faegre to serve Dr. Apte and Dr. Richman, respectively.


DATED:   June 24, 2021                    Respectfully submitted,


                                          By:   _/s/ W. Douglas Sprague_
                                          W. Douglas Sprague (Cal. Bar No. 202121)
                                          David Jung (Cal. Bar No. 314508)
                                          Raina Bhatt (Cal. Bar No. 319435)

                                          **COVINGTON & BURLING LLP**
                                          Salesforce Tower
                                          415 Mission Street, Suite 5400
                                          San Francisco, CA  94105-2533
                                          Telephone: (415) 591-6000
                                          Facsimile:  (415) 591-6091
                                          *dsprague@cov.com*
                                          *gjung@cov.com*
                                          *rbhatt@cov.com*


                                          YASMIN BEST (Cal. Bar No. 235959)
                                          **FAEGRE DRINKER BIDDLE & REATH,
                                          LLP**
                                          1800 Century Park East, Ste. 1500
                                          Los Angeles, California 90067
                                          Telephone: (310) 500-2166
                                          Facsimile:  (310) 229-1285
                                          *yasmin.best@faegredrinker.com*