IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JESSICA RICHMAN, et al.,<br><br>Defendants. | Case No. 21-cv-01911-CRB<br><br>**ORDER GRANTING MOTION FOR ALTERNATIVE SERVICE** |

Plaintiff Security and Exchange Commission (SEC) sued Defendants Jessica Richman and Zachary Apte (together, "Defendants"), alleging violations of the Security Act and the Exchange Act. See Compl. (dkt. 1). The SEC now must alert Defendants to the suit. See Fed. R. Civ. P. 4(c). Neither Defendant has responded to the SEC's notice and request for waiver of service of the summons. See Mot. (dkt. 13) at 2–3; Smyth Decl. (dkt. 14) ¶¶ 4–9. Accordingly, the SEC moves for approval of court-ordered service pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, seeking to serve Defendants by serving a copy of the complaint and summons on their respective United States counsel via personal service and electronic mail. See Mot. Defendants' respective United States counsel (together, "Defendants' Counsel") have filed a special appearance to oppose the SEC's motion. See Opp'n (dkt. 18). As explained below, the Court GRANTS the SEC's motion for alternative service.

**I.    BACKGROUND**

Defendants were the co-founders and former executives of uBiome, Inc. ("uBiome"), a private medical testing company based in San Francisco. Compl. at 1. Since around July 2020, Defendants have resided in Germany. Mot. at 3 (citing Notice of Related Case in a Criminal

Action (dkt. 10) at ¶ 7). On March 18, 2021, the SEC filed a complaint alleging that Defendants committed fraud in the offer and sale of securities of uBiome. See Compl. On the same day, a grand jury returned a criminal indictment against Defendants, charging them with 47 counts of, among other things, conspiracy, health care fraud, aggravated identity theft, wire fraud, securities fraud, and money laundering. See Mot. at 3 (citing Notice of Related Case in a Criminal Action at ¶¶ 2–8). The criminal indictment alleges that Defendants have transferred proceeds of their fraud to bank accounts located in countries outside the United States. See id.

### A. The SEC's Contact with Apte and Richman's Respective United States Counsel

#### 1. Apte

W. Douglas Sprague of the law firm Covington & Burling LLP ("Sprague") had been representing Apte and communicating with the SEC from approximately July 2019 to February 2021 during the SEC's investigation by responding to a subpoena request and arranging for Apte to provide a declaration. Eme Decl. (dkt. 16) at ¶¶ 3–5. After the investigation and the commencement of this lawsuit, Sprague continues to represent Apte. Smyth Decl. at ¶¶ 4–7.

On March 18, 2021, the SEC emailed Sprague, attaching a copy of the file-stamped complaint, a notice and request for waiver of service of the summons, and a waiver of service form respectively. Mot. at 3 (citing Smyth Decl. ¶¶ 4–7 & Exs. A, B, D). Sprague replied that "[i]f [Apte] elects to waive service of the summons, that will be communicated to you." Id. at 2–3 (citing Smyth Decl. ¶¶ 8–9 & Ex. E). Apte has not provided a signed waiver to the SEC. Id. at 3.

#### 2. Richman

Prior to March 2021, Richman was represented by another counsel, who was in communication with the SEC during the investigation. See Eme Decl. ¶¶ 8–12. On March 11, 2021, an Assistant United States Attorney notified the SEC that Joel Hammerman of the law firm Faegre Drinker Biddle & Reath LLP ("Hammerman") was representing Richman in the related criminal lawsuit in which Richman and Apte are joint defendants. See Eme Decl. at ¶ 13.

On March 18, 2021, the SEC contacted the attorney who had represented Richman during the SEC's investigation. Mot. at 3 (citing Smyth Decl. ¶¶ 4–7 & Exs. A, B, D). The attorney

1    informed the SEC that she no longer represented Richman.  Smyth Decl. ¶ 6 & Ex. C.  The SEC

2    then emailed the documents to Hammerman.  Smyth ¶ 7 & Ex. D.  Hammerman provided an

3    identical response as Sprague, stating that "[i]f [Richman] elects to waive service of the summons,

4    that will be communicated to you."  Id. at 2–3 (citing Smyth Decl. ¶¶ 8–9 & Ex. F).  Richman has

5    not provided a signed waiver to the SEC.  Id. at 3.

    **B.**  **The SEC's Attempted Service of Process Under the Hague Convention**

    On March 31, 2021, the SEC submitted a service request to the designated Central Authority under the Hague Convention for service of process in the German State of Berlin pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure.  Id. at 3–4 (citing Smyth Decl. ¶ 12, Ex. G).  On June 3, 2021, the SEC received a response from the designated Central Authority declining the request because it had concluded that the SEC's actions are not civil or commercial under German law.  Id. at 4 (citing Smyth Decl. Ex. H, I).

    **C.**  **The SEC's Motion for Alternative Service**

    On June 10, 2021, the SEC filed this Motion for Alternative Service, asking that the Court permit the SEC to serve Defendants pursuant to Rule 4(f)(3) by "serving a copy of the complaint and summons on defendants' United States counsel via personal service and electronic mail."  Fed. R. Civ. P. 4(f)(3); id. at 8.

    The SEC represents that direct service, by hand or mail, is unavailable under German law, id. at 5 (citing Smyth Decl. ¶ 14, Ex. J), and that service via letters rogatory is impractical because it will likely take a year or more.  Id.  And the SEC represents that "further delay in serving defendants may result in additional transfers of funds" because "defendants have transferred more than $1 million overseas from financial accounts located in the United States" since they left for Germany around July 2020.  Id. at 6 (citing Boodoo Decl. (dkt. 15) ¶ 4–6, Ex. A).

    On June 24, 2021, Defendants' Counsel opposed the SEC's motion.  See Opp'n (dkt. 18).  In the Opposition, Defendants' Counsel referred to a document dated March 17, 2021 provided by Richman's doctor regarding Richman's medical conditions.  Id. at 2:9-14 (citing Hammerman Decl. (dk. 19) Ex. 1).  The Court subsequently sealed that document.  See Order Granting Administrative Motion to File under Seal (dkt. 20).  On July 1, 2021, the SEC replied.  See Reply

3

re Motion for Alternative Service ("Reply") (dkt. 22).

## II. LEGAL STANDARD

Service of an individual in a foreign country is governed by Rule 4(f) of the Federal Rules of Civil Procedure. That rule states:

> Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> >
> > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> >
> > (C) unless prohibited by the foreign country's law, by
> >
> > > (i) delivering a copy of the summons and of the complaint to the individual personally; or
> > >
> > > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

"Under Rule 4(f)(3), courts can order service through a variety of methods, 'including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email,' provided that there is no international agreement directly to the contrary." Juicero, Inc. v. Itaste Co., No. 17-cv-1921-BLF, 2017 WL 3996196, at *2 (N.D. Cal. June 5, 2017) (quoting Rio Props., Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002)). "'[T]he method of service crafted by the district court must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections.'" Rio Props., 284 F.3d at 1016–17 (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)).

In addition, "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)"— it "is neither a 'last resort' nor 'extraordinary relief.'" Rio Props., 284 F.3d at 1015. A party seeking authorization to serve under Rule 4(f)(3) need not show that all feasible service alternatives have been exhausted, but instead, it needs to "demonstrate that the facts and circumstances of the . . . case necessitate[ ] the district court's intervention." Id. at 1016. "[T]he task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)" is committed "to the sound discretion of the district court." Id.

## III.   DISCUSSION

The SEC now asks the Court to approve court-directed service under Rule 4(f)(3) by serving Defendants' Counsel respectively via personal service and electronic mail. See Mot. at 8. The Court GRANTS the SEC's motion based on the circumstances of the case—particularly the lengthy delay imposed by letters rogatory, the ongoing transfers of funds, and the Defendants' Counsel's active and ongoing representation of Defendants.

### A.   The Alternative Service is not Prohibited by International Agreement

Pursuant to Rule 4(f)(3), alternative service must not be prohibited by international agreement. Fed. R. Civ. P. 4(f)(3). Here, international agreement does not preclude the SEC's proposed means of services—even considering Germany's objections to certain articles of the Hague Convention. See Germany Declaration/Reservation/Notification, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=402&disp=resdn (last viewed July 13, 2021) ("[T]he Government of the Federal Republic of Germany objects to the use of methods of transmission pursuant to Articles 8 and 10. Service through diplomatic or consular agents (Article 8 of the Convention) is therefore only permissible if the document is to be served upon a national of the State sending the document. Service pursuant to Article 10 of the Convention shall not be effected."). Thus, service

5

on the U.S.-based Defendants' Counsel is not prohibited by the Hague Convention.[1]

### B.     The Alternative Service Satisfies the Due Process Requirement

The SEC contends, and Defendants' Counsel do not contest, that serving U.S.-based Defendants' Counsel satisfies the due process requirement. See Mot. at 6; see generally Opp'n (dkt. 18).

The method of service authorized by the Court must "comport with constitutional notions of due process" and be "reasonably calculated" to provide notice to the defendants. Rio Prop., 284 F.3d at 1016–17 (citing Mullane, 339 U.S. at 318). Service upon a foreign defendant's counsel based in the United States is a common form of substituted service under Rule 4(f)(3). See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig., No. 1827, 2010 WL 2198240, at *4 (N.D. Cal. May 28, 2010) (authorizing service on foreign defendants through their U.S.-based counsel); Carrico, 2016 WL 2654392, at *4–5 (holding that serving the defendant's U.S.-based counsel was reasonably calculated to provide actual notice even though the counsel objected).

Given the circumstances—Defendants' Counsel's continuous representation of Defendants by filing motion and opposition, and Defendants' Counsel's knowledge of Richman's health condition—it seems clear that the Defendants' Counsel know of Defendants' legal positions and are in contact with them. Thus, service to the Defendants' Counsel is "reasonably calculated in these circumstances to apprise [defendant] of the pendency of the present action." See Rio Prop., 284 F.3d at 1017; see, e.g., Reflex Media, Inc. v. SuccessfulMatch.com, No. 20-CV-06393-JD, 2021 WL 275545, at *3 (N.D. Cal. Jan. 27, 2021) (noting that the defendants' U.S-based counsel having reached out sua sponte to inform the plaintiff about the whereabout of the defendant was evidence that the U.S-based counsel was "entangled with" the defendants).

---

[1] Although Germany objected under Article 8, service through "diplomatic or consular agents," and Article 10, "postal channels" or foreign "judicial officer" of the Hague Convention, courts generally find service on U.S-based counsel permissible. See, e.g., Juicero, 2017 WL 3996196, at *2 (finding that service on Defendants' U.S-based attorney was permissible under the Hague Convention even though China objected under Article 8 and Article 10 of the Hague Convention); Carrico v. Samsung Elec. Co., Ltd., No. 15-cv-02087-DMR, 2016 WL 2654392, at *4 (N.D. Cal. May 10, 2016) (holding that Hague Convention did not bar service on the defendant's U.S-based attorney even though Korea objected under Article 8 and Article 10).

The SEC's request to effect service of process via personal service and electronic mail is also appropriate. "[T]he Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond." Rio Prop., 284 F.3d at 1017. The Ninth Circuit left it to the discretion of the District Court to balance the benefits and limitations of emails when determining appropriate alternative service methods. Id. at 1018–19. Given the SEC and Defendants' Counsel's previous and ongoing email exchanges, service of process via email is appropriate. Service via personal service is also appropriate because the SEC knows of Defendants' Counsel's addresses and contact information. See Smyth Decl.

### C. The SEC Does Not Need to Exhaust All Alternatives Before Requesting an Order for Alternative Service

In their Opposition, Defendants' Counsel first argue that the SEC has yet to sufficiently attempt service, alleging that the SEC had previous knowledge that German law does not consider the SEC's enforcement of U.S. securities law as civil or commercial to warrant service of process under the Hague Convention. Opp'n at 4. Defendants' Counsel next argue that letters rogatory are a reasonable method of service that the SEC could use before seeking an order for alternative service under Rule 4(f)(3). See Opp'n. at 5. The SEC contends that service via letters rogatory is impractical because it "may not work and would likely lead to substantial delay with deleterious defect." Mot. at 5.

Defendants' Counsel's arguments are based on an erroneous interpretation of the law. The Ninth Circuit has held that "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections: it stands independently on equal footing." Rio Prop., 284 F.3d at 1015. Rule 4(f)(3) is not intended as a "last resort" after the plaintiff has exhausted all alternatives. See Rio Prop., 284 F.3d at 1015–16. Rule 4(f)(3) is merely "one means among several which enables service of process on an international defendant." Id. at 1015. Lower courts have held in similar cases that plaintiffs are not required to attempt service under Rule 4(f)(1) or Rule 4(f)(2) before

seeking alternative service under Rule 4(f)(3).[2]

Here, although there is no requirement to first attempt service by other methods before requesting alternative service, id., the SEC has made a good faith effort to attempt to serve Defendants pursuant to Rule 4(f)(1) by means of the Hague Convention. See Mot. at 5. Whether the SEC has previous knowledge of the German law is irrelevant to the Court's decision regarding the SEC's request for alternative service.

Further, the SEC does not need to attempt service through letters rogatory before requesting an order for alternative service under Rule 4(f)(3). The Court's conclusion is further bolstered by the United States Department of State's statement that it would take a year or more to effectuate service through letters rogatory. See U.S. Department of States – Bureau of Consular Affairs, Preparation of Letters Rogatory, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html (last viewed July 7, 2021) ("Before initiating the letters rogatory process . . . [p]arties should also review the Department of State's country specific judicial assistance pages to determine whether other alternatives are available, such as serving process by mail or in person, or hiring a local attorney to petition a court directly to collect evidence . . . [e]xecution of letters rogatory may take a year or more.").

---

[2] See, e.g., Allbirds v. Giesswein Walkwaren AG, No. 19-CV-05638-BLF, 2019 WL 11216184, at *3 (N.D. Cal. Dec. 18, 2019) (holding that it is not necessary to attempt service via letters rogatory before requesting an order for alternative service); In re TFT-LCD (Flat Panel) Antitrust Litig., 2010 WL 2198240, at *3 ("[p]laintiffs need not first attempt to personally serve defendants before they may reasonably conclude that service by letters rogatory is more expensive and time-consuming than serving defendant's counsel."); In re LDK Solar Sec. Litig., No. C 07-05182 WHA, 2008 WL 2415186, at *3 (N.D. Cal. June 12, 2008) (noting that serving the defendant's California office was appropriate despite not having tried to serve through Chinese Central Authority under the Hague Convention); but see Tevra Brands LLC v. Bayer Healthcare LLC, No. 19-CV-04312-BLF, 2020 WL 3432700, at *5 (N.D. Cal. June 23, 2020) (denying the requested alternative service because German Central Authority had not had adequate time to process the plaintiff's third request for service and the delays until the plaintiff's third request were due to the plaintiff's own errors).

8

### D. The Circumstances Necessitate the Court's Intervention

A plaintiff need "only . . . demonstrate that the facts and circumstances of the present case necessitate[ ] the district court's intervention." Rio Props., 284 F.3d at 1016. It is within "the sound discretion of the district court . . . [to] determin[e] when the particularities and necessities of a given case require alternative service of process under Rule 4(f)(3). Id. Here, the SEC has established sufficient facts and circumstances for the Court to intervene. The SEC has provided evidence that Defendants transferred more than $1 million from financial accounts in the United States to foreign accounts between July 2020 and March 2021, Mot. at 3 (citing Boodoo Decl. (dkt. 15) ¶¶ 4–6, Ex. A), that further delay in serving the Defendants could result in more (improper) transfers of fund, id., and that letters rogatory will likely take more than one year to effectuate service, id. at 5.

Defendants' Counsel argue that the Defendants' transfers of funds are insufficient to show "necessity," see Opp'n at 5, referring to Products and Ventures International v. AXUS Stationary (Shanghai) Ltd. to support their argument. No. 16-CV-00669-YGR, 2016 WL 3924191 (N.D. Cal. July 21, 2016) (granting plaintiff's request for alternative service because the defendant had been allegedly both "decommissioning" corporations and transferring funds). It is true that the defendant in Products and Ventures International did more than transfers of funds. See id. at *2. But, the Ninth Circuit has recognized that the "inability to serve an elusive international defendant" is enough to necessitate the district court's intervention. See Rio Props., 284 F.3d at 1016. Thus, the SEC's inability to serve Defendants under the Hague Convention and Defendants' refusal to waive service are enough to necessitate the Court's intervention.[3]

---

[3] Defendants' Counsel also argue that the SEC must show that this is a case of "urgency." See Opp'n at 5–6. In Rio Props., the Ninth Circuit referenced the advisory committee notes that suggest "in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods remain incomplete or unattempted." 284 F.3d at 1015. However, the Ninth Circuit used the advisory notes only to support its conclusion that Rule 4(f)(3) is available without first attempting service by other means, not to suggest an additional requirement that the plaintiff must satisfy. See id. ("[t]hus, examining the language and structure of Rule 4(f) and the accompanying advisory committee notes, we are left with the inevitable conclusion that service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief'."). Thus, the SEC is not required to show that it is a case of "urgency" for the Court to grant relief under Rule 4(f)(3).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the SEC's motion for alternative service and orders the SEC to effect service of process by serving a copy of the complaint and summons on Defendants' Counsel via personal service and email.

**IT IS SO ORDERED.**

Dated: July 19, 2021



CHARLES R. BREYER
United States District Judge