W. DOUGLAS SPRAGUE (Cal. Bar No. 202121)
DAVID JUNG (Cal. Bar No. 314508)
RAINA BHATT (Cal. Bar No. 319435)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533

JOEL M. HAMMERMAN (*Pro Hac Vice*)
JOSHUA P. MAHONEY (*Pro Hac Vice*)
SOPHIE H. GOTLIEB (*Pro Hac Vice*)
TARIFA LADDON (Cal. Bar No. 240419)
FAEGRE DRINKER BIDDLE & REATH, LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 21-CV-01911-CRB |
| Plaintiff, | **MOTION TO DISMISS THE SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT** |
| v. | |
| JESSICA RICHMAN and ZACHARY APTE, | Courtroom: TBD |
| Defendants. | Date: TBD |
| | Time: TBD |

Defendants JESSICA RICHMAN, by her counsel, FAEGRE DRINKER BIDDLE & REATH, LLP, and ZACHARY APTE, by his counsel COVINGTON & BURLING, LLP, submit this MOTION TO DISMISS THE SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). The SEC's fraud allegations are vague and conclusory, falling far short of the heightened pleading standards required by Federal Rule of Civil Procedure Rule 9(b), and must be dismissed.

## TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT ........................................................................ 1

II.     BACKGROUND ......................................................................................... 2

III.    LEGAL STANDARD.................................................................................... 3

IV.     ARGUMENT .............................................................................................. 5

        A.      The Complaint Pleads Counts That Are Impermissibly Vague. ............................ 5

        B.      The Complaint Does Not Adequately Allege Fraudulent
                Misrepresentations In Connection With A Securities Offering. ............................ 7

                1.      The Complaint Fails To Allege Specific Misrepresentations With
                        Particularity.......................................................................... 8

                2.      The Complaint Fails To Plead Material And False Statements Or
                        Omissions. ........................................................................... 10

                3.      The Complaint Fails To Allege Specific Facts That Defendants
                        Concealed Material Information Regarding Insurer Inquiries About
                        uBiome Claims.......................................................................... 20

        C.      The Complaint Fails To Allege Deceptive Conduct To Support A Claim
                Against Dr. Apte and Dr. Richman For Scheme Liability................................... 21

V.      CONCLUSION.......................................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*818 Media Prods., LLC v. Wells Fargo Bank, N.A.*,
No. 16-CV-9427 PSG, 2017 WL 3049565 (C.D. Cal. Feb. 9, 2017) .......................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................4

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) ..................................................................................4

*Bautista v. Los Angeles Cty.*,
216 F.3d 837 (9th Cir. 2000) ..............................................................................................6

*Brody v. Transitional Hosp. Corp.*,
280 F.3d 997 (9th Cir. 2002) .......................................................................................10, 16

*Caro v. Davis*,
No. 21-CV-0685-VBF (JEM), 2021 WL 1546958 (C.D. Cal. Apr. 20, 2021) .......................6

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) ..............................................................................................9

*In re FBR Inc. Sec. Litig.*,
544 F. Supp. 2d 346 (S.D.N.Y. 2008) ..................................................................................4

*Gamm v. Sanderson Farms Inc.*,
944 F.3d 455 (2d Cir. 2019) ...............................................................................................3

*Graham v. Wells Fargo Bank, N.A.*,
2017 WL 86013 (N.D. Cal. Jan. 10, 2017) ...........................................................................4

*Inchen Huang v. Higgins*,
443 F. Supp. 3d 1031 (N.D. Cal. 2020) ....................................................................4, 11, 13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................................................4

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ...........................................................................................................16

*Moyo v. Gomez*,
32 F.3d 1382 (9th Cir. 1994) ..............................................................................................4

*S.E.C. v. Berry*,
   580 F. Supp. 2d 911 (N.D. Cal. 2008) .................................................................21

*S.E.C. v. Dain Rauscher, Inc.*,
   254 F.3d 852 (9th Cir. 2001) ..............................................................................3

*S.E.C. v. Francisco*,
   262 F. Supp. 3d 985 (C.D. Cal. 2017) ..................................................... *passim*

*S.E.C. v. Fraser*,
   2009 WL 2450508 (D. Ariz. Aug. 11, 2009) ........................................................6

*S.E.C. v. Lucent Techs., Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009) .....................................................................21

*S.E.C. v. Richman, et al.*,
   Case No. 21-cv-01911, Dkt. 1 (N.D. Cal. March 18, 2021) ....................................2

*S.E.C. v. SeeThruEquity, LLC*,
   No. 18-CV-10374 (LLS), 2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019) ..............17

*S.E.C. v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) ...........................................................................3

*S.E.C. v. Trabulse*,
   526 F. Supp. 2d 1001 (N.D. Cal. 2007) ...............................................................3

*Salazar v. Cty. of Orange*,
   2012 WL 12896364 (C.D. Cal. July 10, 2012) ......................................................6

*Schiro v. Cemex, S.A.B. de C.V.*,
   438 F. Supp. 3d 194 (S.D.N.Y. 2020) ..................................................................4

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ..............................................................................3

*In re Tesla Motors, Inc. Sec. Litig.*,
   75 F. Supp. 3d 1034 (N.D. Cal. 2014) ................................................................12

*Vess v. Ciba Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................4

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ...........................................................................6

*Wool v. Tandem Computers, Inc.*,
   818 F.2d 1433 (9th Cir. 1987) ...........................................................................10

iii

**Statutes**

15 U.S.C. § 77q(a) ....................................................................................................3, 6

15 U.S.C. § 78j(b) ....................................................................................................3, 6

**Other Authorities**

17 C.F.R. § 240.10b-5 ........................................................................................ *passim*

Federal Rule of Civil Procedure 9(b) ................................................................. *passim*

Federal Rule of Civil Procedure 10(b) ......................................................................5, 6

Federal Rule of Civil Procedure 12(b)(6) ...................................................................4

1

## I.  SUMMARY OF ARGUMENT

The SEC seeks civil penalties, millions of dollars in damages, and additional extreme remedies based on a vague and conclusory Complaint that trumpets fraud but fails to adequately allege the required elements and meet the pleading standard.  The SEC alleges that Dr. Jessica Richman and Dr. Zachary Apte violated Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder, by soliciting investment in uBiome, Inc., while failing to disclose alleged improper practices whereby uBiome purportedly misled physicians to order, and insurers to pay for, its tests.  The SEC appears to assert that this underlying conduct rendered certain of the Defendants' statements and non-disclosures misleading to investors and constituted a fraudulent scheme.  The Complaint entirely fails the pleading standard and must be dismissed.

The Complaint, in an impermissible "shotgun" fashion, alleges in two Counts violations of each and every subsection of Section 17(a), Section 10(b) and Rule 10b-5, and compounds this problem by grouping Dr. Richman and Dr. Apte into one indistinguishable entity.  Dr. Richman and Dr. Apte are left guessing at the Complaint's claims and how either of them allegedly violated the securities laws.

The Complaint also fails to meet the required pleading standard for securities fraud.  Where securities fraud claims are predicated on the concealment of underlying fraud, as they are here, Federal Rule of Civil Procedure 9(b) requires that a complaint plead particularized facts— the who, what, where, when, and how establishing both the alleged securities fraud and the underlying misconduct.  The SEC does not come close to satisfying this heightened pleading requirement and utterly fails to allege how any of the alleged underlying misconduct resulted in materially misleading statements to investors.  The Complaint forgoes these necessary averments in favor of sweeping and conclusory allegations of purported improper conduct in some ill-defined subset of uBiome's operations.  The SEC's claims ultimately focus on six words allegedly conveyed in unspecified pitch decks—"ordered by doctors, reimbursed by

MOTION TO DISMISS THE SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT                    21-CV-01911-CRB

insurance"—which the SEC characterizes as misleading, while, at the same time, admitting that uBiome's tests were, in fact, ordered by doctors and reimbursed by insurers.

Significantly, however, the Complaint *never connects* the uBiome's supposedly problematic business practices to this statement let alone any other  alleged misstatements or material omissions Dr. Richman or Dr. Apte made to investors.  Further, the Complaint does not plead with particularity how those supposed practices were material to the company's multiple lines of business or present and future value, were deceptive, or were manipulative.  The consequence is that Defendants are left to shadowbox against the atmospherics of fraud that the SEC has not specifically alleged.

## II.    BACKGROUND

Dr. Jessica Richman and Dr. Zachary Apte are co-founders of uBiome, a microbial genomics science company with the mission to advance the science of the microbiome and make it useful to people.  Compl. ¶¶ 12-15.[1]  uBiome's first product was named Explorer: a non-clinical product available to consumers, and which used DNA sequencing to identify the bacteria and archaea living in the human gut.  Compl. ¶ 14.  In October 2016, uBiome launched SmartGut, its first clinical test, which detected clinically relevant pathogenic microorganisms living in the human gut associated with specific infections, health risks, and gastrointestinal conditions.  Compl. ¶ 19.  In November 2017, uBiome launched a second clinical test, SmartJane, a vaginal test for sexually transmitted diseases, human papilloma virus (HPV), and bacterial vaginosis.  Compl. ¶ 19.

Patients could obtain SmartGut or SmartJane tests through their own physicians' orders.  If requested, uBiome would also connect patients to doctors who would consider ordering tests for those patients.  Compl. ¶ 22.  These prospective patients would upload relevant personal information, including medical symptom information, to an online platform, which was then accessible to an evaluating physician.  Compl. ¶¶ 22, 24.  Those physicians were then

---

[1] Citations to the Complaint in this case, *S.E.C. v. Richman, et al.*, Case No. 21-cv-01911, Dkt. 1 (N.D. Cal. March 18, 2021), are referenced as "Compl."

2

responsible for determining whether, in their medical judgment, it was appropriate to order the tests for the patients' care.  *See* Compl. ¶¶ 23, 24.  If approved, the patients' samples would be analyzed by uBiome for use by patients and physicians.  *See* Compl. ¶ 24.

Over time, uBiome solicited and obtained private investment.  According to the Complaint, in the summer of 2018, uBiome promoted a Series C funding round which allegedly raised approximately $59 million through the sale of the company's preferred stock and the sale of approximately $2 million in convertible promissory notes.  Compl. ¶¶ 28-29.  The SEC's Complaint alleges Defendants fraudulently misled investors in connection with this Series C fundraising.  Compl. ¶¶ 33-43.

## III.   LEGAL STANDARD

To state a claim under Section 10(b) and Rule 10b-5 of the Securities Exchange Act and Section 17(a) of the Securities Act, the SEC must allege (1) a material misstatement or omission (2) made with scienter (3) in connection with the offer or sale of a security (4) using means or instruments of interstate commerce.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; 15 U.S.C. § 77q(a); *see also S.E.C. v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011); *S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852, 855-56 (9th Cir. 2001).

Under Federal Rule of Civil Procedure 9(b), a plaintiff, including the SEC, must plead with particularity the circumstances constituting fraud—the *who, what, when, where, and how* of the misstatement or omission.  Fed. R. Civ. P. 9(b); *S.E.C. v. Francisco*, 262 F. Supp. 3d 985, 989 (C.D. Cal. 2017).  This pleading standard requires a plaintiff to allege with particularity both the alleged misleading representations as well as facts establishing the falsity of those misrepresentations.  *See, e.g.*, *Gamm v. Sanderson Farms Inc.*, 944 F.3d 455, 463 (2d Cir. 2019) (affirming district court's decision to dismiss complaint for failure to plead securities fraud claim with particularity: "In order to properly provide 'all facts' upon which their securities fraud claim is based, their allegations must also provide particularized facts about the underlying conspiracy.").  "The allegations must be specific enough to give defendants notice of the

particular misconduct which is alleged to constitute the fraud"—*i.e.*, the participants, time, place and nature of the alleged misrepresentations. *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985); *see also S.E.C. v. Trabulse*, 526 F. Supp. 2d 1001, 1004 (N.D. Cal. 2007) ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity.") (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)).  In a securities fraud action predicated on "the non-disclosure of illegal activity, the facts of the underlying illegal acts must also be pleaded with particularity." *Schiro v. Cemex, S.A.B. de C.V.*, 438 F. Supp. 3d 194, 198 (S.D.N.Y. 2020) (internal quotation omitted).[2]

A complaint alleging a unified course of fraudulent conduct is said to be "grounded in fraud" or to "sound in fraud," meaning the pleading as a whole must satisfy Rule 9(b).  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)).  In such cases, a Rule 9(b) motion is the functional equivalent of a motion to dismiss under Rule of Civil Procedure 12(b)(6); if the complaint cannot satisfy Rule 9(b)'s exacting pleading requirements, it must be dismissed.  *See Vess*, 317 F.3d at 1107.

When evaluating a Rule 12(b)(6) motion, the Court accepts all material, well-pled allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  That legal principle, however, "is inapplicable to legal conclusions" masquerading as facts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court similarly does not assume the truth of a "recitation of elements" or make

---

[2] *See also Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1044-54 (N.D. Cal. 2020) (requiring securities fraud plaintiffs to plead with specificity facts that pharmaceutical company promoted off-label use of opioid drug); *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 354 (S.D.N.Y. 2008) ("[I]n order to state a claim that defendants violated the securities laws because they failed to disclose the insider trading scheme, plaintiffs must plead the alleged trading scheme with particularity."); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 631 (S.D.N.Y. 2017) ("As part of the 'circumstances constituting fraud,'" an alleged bribery scheme, nondisclosure of which formed the basis of the securities suit, "must be pleaded with particularity.") (quoting Fed. R. Civ. P. 9(b) (internal quotation marks omitted).

4

"unwarranted deductions" that are not plausible based on the Complaint's allegations.

*See Graham v. Wells Fargo Bank, N.A.*, 2017 WL 86013, at *1 (N.D. Cal. Jan. 10, 2017).

## IV.   ARGUMENT

The lynchpin of the Complaint's securities fraud claims is that Dr. Richman and Dr. Apte allegedly directed or were aware of various purported improper practices at uBiome, and subsequently misled investors by failing to disclose them.  The imprecision in the SEC's Complaint, however, is remarkable.  The Complaint lacks the required particularity to adequately allege any actionable securities fraud.  Instead, in paragraph after paragraph, the SEC forgoes Rule 9(b)-required averments concerning uBiome's sale of securities as allegedly promoted by each of the Defendants individually—the supposed impetus for this action—and instead lobs opaque, conclusory accusations at uBiome's business operations as a whole.

The Complaint alleges that Dr. Apte and Dr. Richman failed to disclose that uBiome "dup[ed] doctors into ordering unnecessary tests," Compl. ¶ 3, and relied on "improper billing practices" to obtain insurer-paid reimbursements for those tests.  Compl. ¶¶ 21, 37.  The SEC claims these practices undermined uBiome's representation that its tests were "ordered by doctors, reimbursed by insurance," or that uBiome had "an established business model that had been proven to generate revenue."  Compl. ¶¶ 33-35.  But the Complaint does not allege falsity or materiality of the alleged misstatements or omissions made by Dr. Richman and Dr. Apte that could plausibly establish a claim of securities fraud.  Instead, the Complaint opts for allegations of wide-ranging yet undefined "billing schemes" that were used to "create the appearance of rapid increases in revenue growth."  Compl. ¶ 27.  In short, the SEC has stacked generalities on top of generalities in place of the who, what, when, where, and how required to plead securities fraud under any theory.  The Complaint should be dismissed.

### A.   The Complaint Pleads Counts That Are Impermissibly Vague.

To start, the Complaint must be dismissed because it constitutes a "shotgun" pleading, violating the pleading requirements of Federal Rule of Civil Procedure 10(b), and leaving Dr. Apte and Dr. Richman guessing at the SEC's theory of its case.  The Complaint ultimately

charges Defendants with two counts: Count One asserts violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act, and Count Two asserts violations of Section 17(a) of the Securities Act.  Compl. ¶¶ 47-52.  Each Count incorporates all allegations of the Complaint and accuses Defendants of violating multiple different provisions of the charged statutes, but does not supply any meaningful detail for Dr. Apte or Dr. Richman to discern what exactly the SEC intends to prove.

"Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006); *see also Salazar v. Cty. of Orange,* 2012 WL 12896364, at *2 (C.D. Cal. July 10, 2012), *aff'd*, 564 F. App'x 322 (9th Cir. 2014).  Such pleadings "do[] not meet Rule 9(b)'s particularity requirement." *S.E.C. v. Fraser*, 2009 WL 2450508, at *14 (D. Ariz. Aug. 11, 2009).  Moreover, such scattershot allegations run afoul of Rule 10(b), as "[s]eparate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." *Bautista v. Los Angeles Cty.*, 216 F.3d 837, 840 (9th Cir. 2000) (citation omitted).  That clarity is necessary here.

As explained below, the shotgun allegations fail to explain with any clarity which subsections of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and 15 U.S.C. § 77q(a) were allegedly violated, and which alleged conduct by which defendant constitutes violations of the statutes' various sections.  Rather, by collectively alleging violations of each provision of the relevant statutes—including apparently distinct theories involving at least fraudulent misrepresentations and scheme liability—the Complaint makes it impossible for Dr. Richman and Dr. Apte to respond to the claims brought against them or either of them.  *See, e.g.*, *Caro v. Davis*, No. 21-CV-0685-VBF (JEM), 2021 WL 1546958, at *3 (C.D. Cal. Apr. 20, 2021) (dismissing complaint for failure to specify which legal claims were asserted under a single statute).

Moreover, except in very limited instances, the Complaint fails to distinguish between statements, acts, or intentions of Dr. Apte and Dr. Richman.  Because both Dr. Apte and Dr. Richman are left to guess at the Complaint's theory of liability, this Motion focuses primarily on the Complaint's general allegation that Dr. Apte and Dr. Richman made fraudulent misrepresentations to uBiome's Series C investors.[3]

### B.   The Complaint Does Not Adequately Allege Fraudulent Misrepresentations In Connection With A Securities Offering.

The Complaint alleges that as part of the Series C offering, Dr. Apte and Dr. Richman made material misrepresentations in connection with uBiome's sale of preferred stock to "approximately" 27 separate investors and convertible promissory notes to another "approximately" six investors.  Compl. ¶¶ 28-29.  Rather than identify specific misrepresentations and explain their falsity, the Complaint instead vaguely describes and assails Defendants' promotion of uBiome.  Compl. ¶ 33.  The Complaint essentially identifies two categories of representations that it alleges were false or misleading.  First, representations that described uBiome's clinical tests as "ordered by doctors."  Compl. ¶ 34.  Second, representations that described the tests as "reimbursed by insurance."  Compl. ¶ 34.  In conclusory fashion, the Complaint alleges these two categories of representations purportedly "painted a false picture" of uBiome as a company that "fit squarely within the well-established and lucrative healthcare insurance reimbursement model," had "generate[d] revenue through collections from healthcare insurers[,] and could be expected to continue to generate such revenue."  Compl. ¶¶ 33, 35, 38-39.

These alleged misrepresentations fail as an adequate basis for a claim under Section 10(b) or Section 17.  The Complaint fails to allege particular facts about the contents or circumstances of each alleged misrepresentation.  Critically, the Complaint also fails to allege facts to explain how each statement was both false and material.

---

[3] To the extent the Complaint could be deciphered to plead a claim based on scheme liability, the Complaint is equally deficient as explained below in Section IV.C.

1. **The Complaint Fails To Allege Specific Misrepresentations With Particularity.**

Instead of pleading particular facts identifying statements by either Dr. Richman or Dr. Apte, the Complaint opts for vague and conclusory references to investor communications and interactions, not the who, what, when, where, and how of required of securities fraud allegations. *See Francisco*, 262 F. Supp. 3d at 989.  In *S.E.C. v. Francisco*, the court dismissed a Complaint brought by the SEC that outlined its allegations of fraud because of its "vague, hedging language." *Id.*  The *Francisco* court held that allegations of fraud reliant on conclusory language—*e.g.*, "typically," "in general" "approximately, "multiple, "frequently," "substantially," etc.—was insufficient to maintain a cause of action. *Id.*  As outlined herein, the securities fraud allegations in this case are similarly flawed and, like the complaint in *Francisco*, should be dismissed. *See, e.g.*, Compl. ¶ 16 ("*most* issues"); ¶ 34 ("*various* pitch decks"); ¶ 36 ("in *many* cases") (emphases added).

The Complaint fails to allege facts with sufficient particularity regarding the circumstances of the alleged misrepresentations.  For example, the Complaint alleges Dr. Apte and Dr. Richman misled investors by disclosing uBiome's accurate, historical revenue growth and related projections "while concealing from investors that uBiome's revenue depended on keeping insurers in the dark about the company's improper billing practices," including in a June 29, 2018 email from Dr. Apte to "the lead Series C investor," and in "an email that Richman sent widely to solicit Series C investors in July 2018." Compl. ¶¶ 38-39.  At the outset, these allegations lack the particularity required by Rule 9(b)—the Complaint does not allege who of the dozens of investors received the emails or whether or how the emails were material to recipients' investment decision, or for the second email, when it was sent (other than a month-long period).[4]

---

[4] As a further example of its vagueness, the Complaint blurs two concepts: billings and revenue. The Complaint switches between these distinct concepts without defining either, alleging facts to connect one to the other, or distinguishing between the two.

8

The Complaint's allegations of other misrepresentations are similarly infirm.  For example, the Complaint alleges material misrepresentations in "various pitch decks provided by Defendants to prospective investors between May and September 2018."  Compl. ¶ 34.  This allegation fails to provide the particularity required by Rule 9(b).  It does not identify a single specific pitch deck, recipient, or date when the pitch deck was provided.  It does not allege whether the alleged misrepresentations were in two pitch decks or twenty.  While elsewhere the Complaint alleges that Dr. Richman was "the primary drafter" of pitch decks provided to investors, it does not connect the dots between particular decks she helped author and any alleged misrepresentations, nor does the Complaint allege whether Dr. Apte had any role in connection with these unspecified pitch decks and, if so, what his role may have been.  Compl. ¶¶ 32, 34.  More fundamentally, other than addressing uBiome's use of existing billings codes (which again was an accurate statement), the Complaint never articulates the specific purported misrepresentations contained within those "various" pitch decks.

When a corporate entity is the alleged vehicle of the fraud, Rule 9(b) requires the plaintiff to identify the specific corporate actors "who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  *Francisco*, 262 F. Supp. 3d at 989 (quoting *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1107 (C.D. Cal. 2015)).  And, of course, a plaintiff is also required to plead why the defendants' alleged representations were fraudulent.  As noted above, each of the emails and the unspecified "pitch decks" fails on at least one of these elements.

Still other allegations fail to even provide the medium of the representation.  For example, the Complaint alleges that Dr. Apte and Dr. Richman misled the Series C lead investor when they stated uBiome's doctor network "exceeded regulatory standards and had been vetted by uBiome's counsel."  Compl. ¶ 42.  Again, the Complaint also fails to plead particular facts regarding the context of the allegedly misleading statements: who made them (Dr. Richman or

Dr. Apte), in what form, the participants to the communication (e.g., the corporate representative of the lead investor), or when the representations were made.  *See* Compl. ¶ 42.

In addition, the Complaint consistently fails to distinguish between Dr. Apte and Dr. Richman; instead, the Complaint characterizes allegations as undifferentiated statements, acts, and/or intentions of both of them collectively.  *See 818 Media Prods., LLC v. Wells Fargo Bank, N.A.*, No. 16-CV-9427 PSG (PLAX), 2017 WL 3049565, at *3 (C.D. Cal. Feb. 9, 2017) (dismissing complaint due to failure to distinguish between acts of all defendants and identify each individuals role); *Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) (dismissing complaint for failure to state clearly the role and actions of each defendant).[5]  Moreover, the Complaint recognizes that Dr. Richman and Dr. Apte had different responsibilities at uBiome—"Richman focused on the company's growth and financing, and Apte concentrated on the technology and science"—and that decisions involving significant aspect of uBiome's business were at times made independently.  *See* Compl. ¶ 16 (stating that "[d]efendants addressed *most issues* together," and that "no decision about a significant aspect of uBiome's business was made without the knowledge and approval *of at least one of Richman or Apte.*") (emphasis added).

Rule 9(b) requires that fraud to be pled with particularity.  The Complaint fails to allege specific misrepresentations with particularity, a significant failure that supports dismissal of the Complaint.

### 2.     The Complaint Fails To Plead Material And False Statements Or Omissions.

In addition to lacking particularity about the basic facts of the alleged misrepresentations, the Complaint fails to plead particular facts to explain why the relevant statements were false and

---

[5] The Ninth Circuit's limited exception to this principle cannot rescue the Complaint.  In *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987), the Ninth Circuit approved collective securities fraud allegations against a narrowly defined group of corporate officers who had direct involvement in the company's day-to-day affairs and were alleged to have been jointly responsible for false statements in "prospectuses, registration statements, annual reports, press releases, or other group-published information." *Id.* at 1440.  The Complaint does not satisfy any of these criteria.  To start, it fails to identify any such group-published documents containing the alleged misrepresentations.

material.  Rule 10b-5 "prohibit[s] only misleading and untrue statements, not statements that are incomplete."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  The Complaint must therefore allege with particularity that each relevant statement was false or "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exists."  *Id.*  To allege materiality, the Complaint must plead facts demonstrating "a substantial likelihood that the disclosure . . . would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."  *Inchen Huang*, 443 F. Supp. 3d at 1042 (citation and internal quotations omitted).[6]  Both falsity and materiality are required to be pled with particularity for a claim under Section 10(b) and Section 17, and the Complaint supports neither.

**a)**      **The Complaint Fails To Adequately Allege Facts Establishing The Materiality And Falsity Of "Ordered By Doctors."**

The Complaint alleges that the statement "ordered by doctors" was materially false or misleading (even though there is no dispute the tests were, in fact, "ordered by doctors") because uBiome misled some unstated number of doctors in the uBiome network into ordering an unspecified number of alleged "retests."  Compl. ¶ 36.  The Complaint alleges that Dr. Apte and Dr. Richman "dup[ed] doctors into ordering many tests of dubious clinical utility" by allowing physicians in the uBiome network to order clinical tests for patients who had previously provided samples and received results.  Compl. ¶ 24.

The Complaint fails to allege particular facts required by Rule 9(b) and provides an insufficient basis to conclude that this statement was false or misleading.  The Complaint does not specify whether these "retest" requests were for prior Explorer consumers, or for SmartGut or SmartJane patients.[7]  If the retests were for prior Explorer samples, which is indicated by the

---

[6] The Complaint never addresses the "total mix" of information, relying instead on scattered allegations lacking particularity.  *See* Compl. ¶ 24.

[7] Confusingly, the Complaint does not seem to differentiate between patients (who are under a doctor's care) and consumers (who are not).  Similarly, the Complaint does not define what it means by "retest," further evidence of its imprecision.  *See* Compl. ¶ 24.

11

Complaint's allegation that these were "*consumer's*" old samples," Compl. ¶ 24 (emphasis added), there would be no previous *clinical* reports whatsoever (because Explorer was not a clinical test) to "withh[o]ld from doctors" and therefore the Complaint alleges no deceptive conduct. *See* Compl. ¶ 24. The confusion in trying to decipher the Complaint's actual allegations regarding the type of tests and retests at issue reflects the fatal lack of particularity in the SEC's allegations.

Moreover, even assuming that uBiome provided doctors with patients' original symptoms (i.e., the symptoms the patient had at the time the sample was taken), the Complaint never explains how this was deceptive, which it must to support its conclusion that doctors were "dupe[d]." For instance, the Complaint never suggests that any false information was provided to doctors, much less that Dr. Apte or Dr. Richman directed such conduct.[8]

Nor does the Complaint plead facts to suggest that the failure to disclose this alleged practice was material. By the Complaint's own terms, the alleged practice was limited only to doctors in the network, and of those, only to doctors who ordered clinical testing of prior samples. The allegation does not, by its own terms, apply to other tests, such as, first-time tests ordered by those same doctors, or any tests ordered by doctors outside of this network. Even within the limited subset of uBiome tests, the Complaint entirely omits the number of retests that were erroneously ordered, and even qualifies its conclusion, stating that "doctors . . . *often* did not know what they were ordering." Compl. ¶ 36 (emphasis added). In addition, the Complaint never alleges how many retests were ordered by doctors in the uBiome network (the only doctors allegedly deceived), how many of those were subsequently billed to insurers, or the amount of revenue generated from this narrow subset of tests, other than to say there were "many" retests.

---

[8] The Complaint suffers from a further lack of particularity, because it does not allege any detail regarding the specific doctors who were misled (including how many were allegedly misled), or when those doctors were misled.

MOTION TO DISMISS THE SECURITIES AND EXCHANGE COMMISSION'S COMPLAINT          21-CV-01911-CRB

Compl. ¶ 24.[9]  The type of qualifying language used by the SEC in advancing this claim—"often, "many" and "significant"—is the same type of "vague, hedging language" the court in *Francisco* found insufficient to meet Rule 9(b)'s pleading requirements.  *Francisco*, 262 F. Supp. 3d at 989-90.

Taken together, the Complaint's glaring holes preclude any inference concerning how the alleged conduct affected representations about uBiome's revenue or future projections.  The Complaint equally fails to place the alleged fraudulent conduct in the context of uBiome's overall business, and therefore there is no basis to conclude that the failure to disclose the alleged retests was material; that it "significantly altered the total mix of information made available." *Inchen Huang*, 443 F. Supp. 3d at 1042.  The Complaint fails to adequately allege facts establishing the falsity or materiality of the statement "ordered by doctors," and therefore the Court should dismiss the Complaint.

> **b)** **The Complaint Fails To Adequately Allege Facts Establishing The Materiality And Falsity Of "Reimbursed By Insurance."**

The Complaint also alleges that the statement that uBiome's tests were "reimbursed by insurance" was false and misleading.  Regardless of any alleged "improper billing practices," it is not disputed that insurers were, in fact, billed, and that reimbursements were, in fact, received. Compl. ¶ 37.  The Complaint also alleges related statements, including that uBiome's tests were covered by "existing [insurance billing] codes" and "current health plan guidelines," were also false and misleading.  Compl. ¶ 41.  All of these allegations lack the Rule 9(b) required detail and must be dismissed.

The Complaint generally alleges that investors were misled by representations about uBiome's revenue because they were not informed of various "improper" billing practices.

---

[9] The assertion that "*a significant percentage* of uBiome's sales volume . . . depended on billing for retests" provides no additional insight, Compl. ¶ 40 (emphasis added).  *See, e.g.*, *In re Tesla Motors, Inc. Sec. Litig.*, 75 F. Supp. 3d 1034, 1042-46 (N.D. Cal. 2014) (holding that a manufacturer's failure to disclose its vehicle's "*significant* vulnerabilities" was insufficient to maintain cause of action) (emphasis added).

Compl. ¶¶ 38-40.  In particular, the Complaint alleges that Defendants "oversaw the design" of a "doctor network" where the "default for doctors was to approve test requests based solely on online questionnaire responses," which was an alleged reimbursement risk, Compl. ¶¶ 22-23, improperly created patient consultation records to backstop certain unidentified claims, Compl. ¶ 25, prematurely billed an unstated number of tests, failed to collect certain payments directly from patients, and used improper billing codes, Compl. ¶ 26.  Once again, however, the Complaint omits detailed facts providing the who, what, when, where, and how of this allegedly fraudulent conduct in favor of bald, conclusory allegations.  The Complaint similarly fails to allege detailed facts that would establish the materiality of any of these alleged practices.  Rule 9(b) requires particularity; without it, the Complaint should be dismissed.

(1)     Doctor Patient Relationship

The Complaint alleges that the statement "reimbursed by insurance" was false because uBiome misled insurers by allowing doctors using its portal to order tests without "establishing the required doctor-patient relationship."  Compl. ¶ 23.  The Complaint further alleges that Dr. Apte and Dr. Richman misled the Series C lead investor when they stated uBiome's doctor network "exceeded regulatory standards and had been vetted by uBiome's counsel." Compl. ¶ 42.  The Complaint claims this assurance was misleading because uBiome's general counsel had advised that tests prescribed solely on a patient questionnaire "would be a reimbursement risk."  Compl. ¶ 23.  The Complaint goes on to allege that when "certain insurance companies" asked for supporting doctor consultation records, Dr. Apte and Dr. Richman directed uBiome employees to create and submit "fake records" to "make it seem as though doctor-patient consultations had occurred."  Compl. ¶ 25.

Principally, the Complaint fails to allege particular facts regarding the underlying allegations.  It also does not allege how the doctor network was "designed to steer" doctors towards ordering uBiome tests without forming a doctor-patient relationship.  The Complaint does not allege that the use of patient questionnaires, on its own, runs afoul of the doctor-patient

relationship requirements, or was in violation of any state law or any insurer's policies.[10] Moreover, the Complaint in fact contemplates that doctors were able to use more than patient questionnaires when assessing the medical necessity of the uBiome test.  *See* Compl. ¶ 23.  Even assuming, however, that the default for doctors was to consider only a questionnaire (a fact not pled), a "default" implies that doctors had other options.  Importantly, the Complaint does not allege that any specific doctor ordered a single uBiome test without forming a doctor-patient relationship.  Without these allegations, it is impossible to understand how Dr. Richman's or Dr. Apte's statements could be misleading.

Similarly, the Complaint also fails to identify a single healthcare insurer, much less one to which uBiome presented claims that "fell below" that insurer's billing "requirements," or which demanded additional records, or which received allegedly fake medical records.  The Complaint instead treats "insurers" as an unspecified and undifferentiated monolith with assumely the same beneficiary agreements and provider reimbursement requirements.  *See, e.g.*, Compl. ¶ 25.  This lack of particularly falls below the standards required by Rule 9(b) and ignores the reality that health care laws and insurer requirements differ significantly from state to state and insurer to insurer.[11]

Moreover, the Complaint pleads no facts regarding if and how uBiome (or the Defendants) supposedly generated fake medical records, merely alleging that such activity was "directed" without any indication of the required who, what, when, where and how it occurred, if at all.  Rather, the SEC alleges that when "certain insurance companies" asked uBiome for

---

[10] Paragraph 23 alleges only that "Defendants *understood* that the default for doctors was to approve test requests based solely on online questionnaire responses . . . without any pre-existing relationship, live consultation, or further interaction between the doctor and consumer."  Compl. ¶ 23 (emphasis added).  The Complaint does not explain what constituted a "default" or how that affected doctor orders..  It further does not allege that doctors ordered tests based only on questionnaires.

[11] *See, e.g.*, Carl Benjamin Lewis, *Private Payer Parity in Telemedicine Reimbursement: How State-Mandated Coverage Can Be the Catalyst for Telemedicine Expansion*, 46 U. Mem. L. Rev. 471, 483 (2015) ("[T]he differences between each state law make it difficult to provide effective guidance to multi-state [telemedicine] providers.").

medical record support, Defendants directed "company employees" to create and backdate

patient records "and then to submit those fake records to insurance companies," Compl. ¶ 25, the

Complaint provides no details regarding the circumstances of this asserted conduct.  It does not

allege who (Dr. Richman or Dr. Apte) directed the problematic conduct, whether and how many

records were created, what information in these records was "fake" or false, whether the records

were ever submitted, which insurers (if any) received the records, or the value of the claims with

which they were associated.

But even assuming the Complaint pled the alleged statements with particularity, the

Complaint fails to explain why the statements were false or misleading.  The Complaint focuses

on a July 2017 email from uBiome's general counsel, but even this does not suggest that any

statement made by Dr. Apte or Dr. Richman was false or misleading.  The Complaint

paraphrases that email as stating that "any tests prescribed based solely on consumers'

questionnaires, versus a live consultation between consumer and doctor, would be a

reimbursement risk."  Compl. ¶ 23.  Even assuming this practice was a reimbursement risk, that

does not make false or misleading the statement "reimbursed by insurance."  Parties seeking

reimbursement from health care insurers face the risk of denial and acknowledging

reimbursement risk is a far cry from the blanket conclusion that uBiome's tests were not

reimbursed by insurance.  The Complaint must plead more than the allegation that Dr. Apte or

Dr. Richman did not disclose every possible risk to the company's growth prospects.  *See*

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) ("[I]t bears emphasis that § 10(b)

and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material

information."); *see also Brody*, 280 F.3d at 1006.[12]

---

[12] In fact, the Complaint does not allege that Defendants concealed reimbursement risks
associated with its doctor portal from uBiome's Series C investors.  Compl. ¶ 23.  Rather, the
Complaint alleges Defendants concealed uBiome's use of patient questionnaires from the
company's counsel and board, *see* Compl. ¶ 23, but the Complaint fails to explain how this
purported concealment misled uBiome's Series C investors—the relevant inquiry in evaluating
the SEC's claims.

Further, the statement that uBiome's practices "exceeded regulatory standards" has no relevance whatsoever to whether doctors, *see* Compl. ¶ 42, who were not uBiome employees, ordered tests in compliance with insurers' reimbursement policies and/or whether any deviation from those policies would be grounds to deny coverage.  Regulatory standards, which vary by state, are not the same as reimbursement requirements, which vary by insurer.  Nor are the actions of independent doctors the same as uBiome's actions or the actions of the Defendants.  Thus, the Complaint's allegations are not only vague and conclusory, they are a non-sequitur.

The Complaint also fails to allege particularized facts to support how the alleged misstatements would have been material to investors.  Despite the allegation that 91 percent of uBiome's revenues derived from health insurance reimbursements, Compl.  ¶ 27, the Complaint does not allege how much revenue was attributable to tests ordered via the doctor portal or network, let alone what was attributable to allegedly problematic tests ordered without establishing a doctor-patient relationship, or how that compared to the revenue from doctors outside the network, or uBiome's other products and lines of business.  Nowhere does the Complaint indicate the number of tests purportedly ordered in this fashion, or the proportion of those tests compared to tests ordered through other channels, or the number of allegedly fake records provided to insurance companies.  As to the July 2017 email, there is no indication whether that reimbursement risk was minor and immaterial, or substantial.  Without any allegations as to the significance of the practice, there is no basis whatsoever to conclude that this practice was material, which, of course, must also be pled with particularity.  *See S.E.C. v. SeeThruEquity, LLC*, No. 18-CV-10374 (LLS), 2019 WL 1998027, at *4 (S.D.N.Y. Apr. 26, 2019) ("A misrepresentation or omission of fact must be material for liability to attach under Exchange Act Rule 10b-5(b) or Securities Act § 17(a) (2), and materiality must be pled with particularity.").

1

2          (2)      Billing Practices

3          In further support of its misrepresentation allegations, the Complaint summarily alleges

that uBiome's improper billing extended "to other areas," which includes "bill[ing] for some

4  tests that had not yet been performed," failing to collect patient responsibility payments in

5  contravention of insurer requirements, and using "incorrect," and varying, CPT billing codes.

6  *See* Compl. ¶ 26.  For example, the Complaint alleges that Defendants "falsely represented to

7  investors that uBiome's clinical tests were covered by 'existing [insurance billing] codes' and

8  'current health plan guidelines'" in pitch decks.  Compl. ¶ 41.  According to the SEC, the pitch

9  decks were misleading because "uBiome was relying on incorrect billing codes and varying

10 billing codes by insurer to trick insurers into reimbursing the company."  Compl. ¶ 41.  The

11 Complaint provides no detail to substantiate this conclusory assertion.

12         Missing from the Complaint are any details concerning these alleged practices such that

13 they could render false Dr. Apte's or Dr. Richman's statements.  The Complaint fails to allege

14 with particularity how any of uBiome's practices contravened any specific insurers' policies.  It

15 does not allege what CPT codes uBiome used, for which test (SmartGut or SmartJane), what

16 billing codes should have been used (and why those alternatives were preferable), which insurers

17 were allegedly tricked, and why the use of specific codes, or the varying of codes, was

18 fraudulent.[13]  Notably, missing from the Complaint is the allegation that Dr. Apte or Dr.

19 Richman failed to disclose the actual codes uBiome used to investors.  Without these allegations,

20 it is entirely unclear how this practice would have any bearing on the truth of the statement

21 "reimbursed by insurance," especially given, as noted in the Complaint, tests were, in fact,

22 reimbursed by insurance.

23

24

25 _____
[13] The Complaint also generally alleges that "defendants engaged in these [coding] practices
26 despite warnings from company employees, including warnings in August 2018."  Compl. ¶ 26.
This further allegation says little and does not withstand scrutiny because the Complaint fails to
27 plead who "warned" the "defendants," what they said, when they said it, or the like.

28                                            18

The Complaint similarly fails to allege facts to support the materiality of these practices. The Complaint focuses on revenue numbers and projections in emails sent by Dr. Apte and Dr. Richman in June and July 2018.  Compl. ¶¶ 38-39.  But the Complaint alleges no facts to suggest that the purportedly withheld information would have significantly altered the total mix of information available to investors.  Regarding tests allegedly billed prior to test performance, the Complaint fails to allege if or when the tests were subsequently performed or how many tests were billed in this manner.  The Complaint neither accounts for any revenue received as a result of any of these practices, nor explains whether the timing of those receipts impacted uBiome's past or future revenue calculations, or, even if it did, whether those amounts were shared with and material to investors.[14]

The Complaint similarly omits any detailed allegations regarding uBiome's alleged failure to collect patient responsibility payments.  It does not explain which insurers' rules were overlooked, the particular rules not followed, when those errors occurred, how they were overlooked, the number of claims affected, or how these practices affected uBiome's revenue calculations or otherwise mislead uBiome's Series C investors.

The Complaint also fails to allege how uBiome's coding affected the company's revenue and in what amount, instead focusing on the representation that "uBiome's clinical tests were covered by 'existing [insurance billing] codes' and 'current health plan guidelines.'" Compl. ¶ 41.[15]  The Complaint suggests that these statements were material to the lead investor of the Series C offering because "they signified that uBiome could 'quickly and efficiently' launch its clinical tests, thereby avoiding the years-long process for applying for a new, custom

---

[14] The Complaint does not allege that uBiome billed for tests it did not perform.

[15] Although purportedly quoting pitch decks provided to Series C investors, the Complaint does not identify the decks, to whom they were provided, when they were distributed, etc., as discussed in Section IV.B.1.  *See* Compl. ¶¶ 32, 34, 41.

insurance billing code." Compl. ¶ 41.[16]  This allegation is illogical based on the facts alleged in the Complaint.  As set forth in Paragraph 19, uBiome launched SmartGut in November 2016 and SmartJane in November 2017.  Compl. ¶ 19.  By April 2018, uBiome was processing over 15,000 tests a month.  Compl. ¶¶ 38-39.  Accepting those allegations as true, it is illogical to conclude that statements in pitch decks provided to investors in the summer of 2018 misled investors to think uBiome "could . . . launch" clinical tests that uBiome had in fact launched in 2016 and 2017.  Beyond that one allegation, the Complaint never identifies a single specific investor that found any of the specific alleged misstatements to be material, *see* Compl. ¶ 43, far from the particularity required by Rule 9(b).

### 3. The Complaint Fails To Allege Specific Facts That Defendants Concealed Material Information Regarding Insurer Inquiries About uBiome Claims.

The Complaint alleges that during the five months in 2018 that uBiome allegedly sought Series C investment "several insurers . . . challenged uBiome's practices," which Dr. Apte and Dr. Richman failed to disclose to investors.  Compl. ¶ 28.  As with the other deficient aspects of the allegations detailed above, the Complaint fails to identify which, or even how many, insurers challenged uBiome claims, the basis for their challenge, the number or value (if any) of the claims contested, or why such "challenges" were material to uBiome's revenue calculations or future projections.  *See* Compl. ¶¶ 28, 37.[17]  The Complaint even acknowledges that it was not until April 2019 that certain insurers requested repayment of amounts paid to uBiome. Compl. ¶ 44.  The April 2019 insurer challenges could not have been information material to investment during the summer of 2018.

---

[16] Although Paragraph 41 quotes the term "quickly and efficiently," the Complaint does not attribute the source of that statement, to whom it was made, or when it was said.  *See* Compl. ¶ 41.

[17] The Complaint later repeats and recasts these same allegations, stating that insurers "had begun flagging and rejecting" uBiome "billing practices."  Compl. ¶ 40.  Again, however, the Complaint does not identify which insurers, how they "flagg[ed]" claims, when they challenged uBiome, how many claims were flagged or rejected, etc.  *See* Compl. ¶¶ 40, 44.

**C.      The Complaint Fails To Allege Deceptive Conduct To Support a Claim Against Dr. Apte And Dr. Richman For Scheme Liability.**

Although its allegations are intertwined with those pertaining to false and misleading representations and its claims for relief unclear, the Complaint apparently attempts to allege that Dr. Richman and Dr. Apte engaged in a scheme to defraud or engaged in a course of business that defrauded investors through allegedly engaging in improper billing practices.  The Complaint alleges Dr. Richman and Dr. Apte engaged in such a scheme in order to "demonstrate strong growth and revenue to investors in the lead up to the company's Series C fundraising round."  *See* Compl.  ¶ 20.  This claim—if it is, in fact, the scheme the SEC is alleging—relies upon the same insurance billing practices described above to argue that this "billing scheme" allowed the company to fraudulently inflate its revenues (despite the fact that insurance billing and company revenue are two very distinct concepts).  Compl.  ¶¶ 23-26.

To state a claim for primary scheme liability, the SEC's Complaint must allege that the defendant (1) "committed a deceptive or manipulative act . . . in furtherance of the alleged scheme to defraud" (2) "with scienter."  *S.E.C. v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 350 (D.N.J. 2009).  Rule 9(b)'s particularity requirement applies with equal force to scheme claims.

For the same reasons that the Complaint fails to detail the falsity of the alleged misrepresentations, the Complaint fails to allege a scheme with particularity.  The Complaint does not allege the required who, what, when, and how of any of the alleged improper practices that could form the basis of a scheme that ultimately defrauded investors.  Most critically, however, the Complaint fails to allege why any of the allegedly improper billing practices were deceptive or manipulative, relying instead on cursory conclusions insufficient under Rule 9(b).

A scheme claim would also fail for the additional reason that the Complaint does not distinguish between Dr. Apte and Dr. Richman.  "It is not enough that a transaction in which a defendant was involved had a deceptive purpose and effect; *the defendant's own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect."  *S.E.C. v. Berry*, 580 F. Supp. 2d 911, 923 (N.D. Cal. 2008) (quoting *Simpson v. AOL Time*

21

*Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006)) (emphasis added).  The collective pleading against Dr. Apte and Dr. Richman precludes the ability to identify each individuals' alleged contribution to a scheme.  As noted above, the Complaint repeatedly fails to distinguish between Dr. Apte and Dr. Richman, instead characterizing virtually every alleged act or omission as conducted by both.  Even at the pleading stage, the SEC must provide more, especially in light of Dr. Richman's and Dr. Apte's differentiated responsibilities as alleged in the Complaint.

## V.    CONCLUSION

The SEC's fraud allegations fall far short of the heightened pleading standards demanded of this action.  For this reason and those addressed above, Dr. Jessica Richman and Dr. Zachary Apte respectfully request that the Court grant the instant Motion and dismiss the Securities and Exchange Commission's Complaint.

DATED:  August 30, 2021                    Respectfully submitted,


By:    */s / W. Douglas Sprague*
W. DOUGLAS SPRAGUE (Cal. Bar No. 202121)
DAVID JUNG (Cal. Bar No. 314508)
RAINA BHATT (Cal. Bar No. 319435)

**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Facsimile: (415) 591-6091
*dsprague@cov.com*
*gjung@cov.com*
*rbhatt@cov.com*


By:    */s / Joel M. Hammerman*
JOEL M. HAMMERMAN (*Pro Hac Vice*)
JOSHUA MAHONEY (*Pro Hac Vice*)
SOPHIE H. GOTLIEB (*Pro Hac Vice*)
TARIFA LADDON (Cal. Bar No. 240419)
**FAEGRE DRINKER BIDDLE & REATH, LLP**
1800 Century Park East, Ste. 1500
Los Angeles, California 90067
Telephone: (310) 500-2166
Facsimile: (310) 229-1285
*joel.hammerman@faegredrinker.com*
*josh.mahoney@faegredrinker.com*
*sophie.gotlieb@faegredrinker.com*
*tarifa.laddon@faegredrinker.com*

23