ERIN E. SCHNEIDER (Cal. Bar No. 216114)
MONIQUE C. WINKLER (Cal. Bar No. 213031)
BERNARD B. SMYTH (Cal. Bar No. 217741)
  smythb@sec.gov
THOMAS J. EME (Ill. Bar No. 6224870)
  emet@sec.gov
DAVID ZHOU (NY Bar No. 4926523)
  zhoud@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
Telephone: (415) 705-2500
Facsimile:  (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 21-cv-01911-CRB |
| Plaintiff, | **SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| JESSICA RICHMAN and ZACHARY APTE, | Courtroom:  6, 17th Floor |
| Defendants. | Date:       Friday, November 5, 2021 |
| | Time:       10:00 a.m. |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 3

      A.   Defendants Co-Founded and Closely Managed uBiome
           Together ................................................................................................. 3

      B.   Defendants Engaged in a Scheme to Inflate uBiome's
           Revenue Through Improper Insurance Billing Practices and
           Mislead Investors ................................................................................. 4

      C.   Defendants Misled Investors in uBiome's Series C Offering ............. 5

      D.   Defendants Engaged in Additional Deceptive Conduct in
           Furtherance of Their Fraud ................................................................. 7

III.  LEGAL STANDARDS ...................................................................................... 7

      A.   Federal Rule of Civil Procedure 12(b)(6) ......................................... 7

      B.   Federal Rule of Civil Procedure 9(b) ................................................. 8

IV.   ARGUMENT ...................................................................................................... 8

      A.   The Complaint Is Not a "Shotgun" Pleading..................................... 8

      B.   The Complaint Satisfies Rule 9(b)'s Pleading Requirements ........... 11

           1.   The Complaint Provides Sufficient Notice
                for Defendants to Understand the Allegations
                Against Them..............................................................................11

           2.   The Complaint Adequately Alleges
                Fraudulent Misrepresentations...................................................11

      C.   The Complaint Adequately Pleads Materiality.................................. 16

      D.   The Complaint Adequately Alleges Deceptive Conduct under
           *Lorenzo* ............................................................................................... 18

V.    CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

CASES

*818 Media Prods., LLC v. Wells Fargo Bank*, 16 Civ. 9427, 2017 WL 3049565 (C.D. Cal. Feb. 9, 2017) .................................... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................ 7

*Basic v. Levinson*, 485 U.S. 224 (1988) ...................................... 16, 17

*Bautista v. Los Angeles Cty.*, 216 F.3d 837 (9th Cir. 2000) ............ 11

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ...................... 11, 15

*Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) .......................... 10

*Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995) .............. 8, 11, 17

*In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. June 16, 2021) .............................................................. 18

*In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346 (S.D.N.Y. 2008) ...................................................................... 12, 15

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) (en banc) .................................................................... 8

*In re Providian Fin. Corp. Sec. Litig.*, 152 F. Supp. 2d 814 (E.D. Pa. 2001) ........................................................ 12, 13

*In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388 (S.D.N.Y. 2005) ........................................... 12

*Livid Holdings v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005) .................................................... 16

*Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) ...................... 2, 9, 18, 19

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) .......... 17, 18

*No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) ............. 17

*SEC v. Alexander*, 115 F. Supp. 3d 1071 (N.D. Cal. 2015) .............. 9

*SEC .v Bardman*, 216 F. Supp. 3d 1041 (N.D. Cal. 2016) ............. 19

*SEC v. Berry*, 580 F. Supp. 2d 911 (N.D. Cal. 2008) ....................... 8

*SEC v. City of Miami*, 988 F. Supp. 2d 1343 (S.D. Fla. 2013) ............................................................................... 9

*SEC v. Daifotis*, No. 11 Civ. 137 WHA, 2011 WL 2183314 (N.D. Cal. June 6, 2011) ................................................... 9

*SEC v. Das*, No. 10 Civ. 102, 2010 WL 4615336 (D. Neb. Nov. 4, 2010) ................................................................. 10, 11

*SEC v. Francisco*, 262 F. Supp. 3d 985 (C.D. Cal. 2017) .......... 13, 14

*SEC v. Fraser,* No. 09 Civ. 443, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009) ............................................................ 11

*SEC v. ICN Pharm., Inc.*, 84 F. Supp. 2d 1097 (C.D. Cal. 2000) ..................................................................................... 8

*SEC v. Levin*, 232 F.R.D. 619 (C.D. Cal. 2005) ........................ 15

*SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342 (D.N.J. 2009) ................................................................................... 18

*SEC v. Med. Capital Holdings*, 09 Civ. 818, 2010 WL 809406 (C.D. Cal. Feb. 24, 2010) ......................................... 14

*SEC v. Merchant Capital, LLC*, 483 F.3d 747 (11th Cir. 2007) ................................................................................... 17

*SEC v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999) ............................................................................... 9, 18

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) ......................... 17

*SEC v. Phan*, 500 F.3d 895 (9th Cir. 2007) ............................ 17

*SEC v. Rana Research, Inc.*, 8 F.3d 1358 (9th Cir. 1993) .......... 14

*SEC v. Reyes*, 491 F. Supp. 2d 906 (N.D. Cal. 2007) ............... 18

*SEC v. Sabhlock*, No. 08 Civ. 4238 CRB, 2009 WL 10690310 (N.D. Cal. Feb. 18, 2009) ........................................ 7

*SEC v. Tolstedt*, No. 20 Civ. 7987 JST, 2021 WL 3415189 (N.D. Cal. June 28, 2021) .......................................... 9

*United States v. Two Condos. Located at 465 Ocean Drive, Units 315 and 316, Miami Beach, Fla. 33139*, No. 21 Civ. 4060 CRB (N.D. Cal. May 27, 2021) ................................. 15

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ...... 7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ............................................................................ 11

*Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006) ................................................................ 10, 11

*Walling v. Beverly Enters.*, 476 F.2d 393 (9th Cir. 1973) ...................................................................... 8, 11

*Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996) ................................................................... 8

<u>STATUTES</u>

Section 10(b) of the Exchange Act ............................................................... *passim*

Section 17(a) of the Securities Act ............................................................... *passim*

<u>OTHER AUTHORITIES</u>

Federal Rule of Civil Procedure 12(b)(6) ............................................................... 7

Federal Rule of Civil Procedure 9(b) ............................................................... *passim*

Rule 10b-5; 17 C.F.R. § 240.10b-5 ............................................................... *passim*

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") respectfully submits this Opposition to Defendants' Motion to Dismiss.

## I.  <u>INTRODUCTION</u>

The SEC's Complaint alleges that Jessica Richman and Zachary Apte (together, "Defendants") defrauded investors in uBiome, the medical testing company Defendants cofounded, out of approximately $60 million by making fraudulent misrepresentations and engaging in other deceptive conduct that painted a false picture of uBiome as a rapidly growing company with a strong track record of reliable revenue based on health insurance reimbursements for its tests. In truth, uBiome's purported success in generating revenue was a sham because it depended on improper billing practices that Defendants directed and which, once discovered, led insurers to claw back their previous reimbursement payments to uBiome. Defendants, who closely managed every aspect of uBiome's operations together, made $5 million each as part of the alleged fraudulent securities offering and both asserted their Fifth Amendment privilege against self-incrimination during the investigation of this matter, filed a motion to dismiss the Complaint, arguing that the Complaint lacks sufficient detail to permit them to answer these allegations. For the reasons set forth below, the Court should reject Defendants' arguments and deny their motion to dismiss.

*First*, the Complaint does not constitute an impermissible "shotgun pleading" as Defendants contend. The Complaint asserts two claims, both brought pursuant to the anti-fraud provisions of the federal securities laws (i.e., Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act). Though Defendants argue that they cannot determine which conduct is attributed to each of them, the Complaint makes it very clear when and how both Defendants engaged in the alleged fraud, or alternatively, the instances in which one took the leading role. As the only two claims asserted are securities fraud claims sharing nearly identical elements and supported by the same conduct, Defendants' argument that they cannot determine which allegations go to which claim has no basis and should be rejected.

*Second*, Defendants argue that the Complaint fails to plead fraud with particularity as required by Rule 9(b). Not so. The Complaint pleads in detail the "who, what, where, when, and how" of Defendants' fraudulent conduct. As but one example, the Complaint's allegations regarding

misrepresentations in pitch decks used to raise money from investors sets forth the required who (both Defendants on the one hand who made the pitch, and uBiome Series C investors on the other); what (false and misleading representations that uBiome's clinical tests were "ordered by doctors, reimbursed by insurance"); where (in the pitch decks used with investors); when ("between May and September 2018") and how (both Defendants provided the pitch decks containing the misrepresentations to prospective investors). Compl. ¶¶ 34, 35. The Complaint also explains why the misrepresentations were false and misleading – they gave the false impression that uBiome's tests fit within the well-established and lucrative health insurance reimbursement model. In short, the Complaint meets the particularity requirement of Rule 9(b), and Defendants' argument to the contrary should be rejected.

*Third*, Defendants claim that the Complaint fails to adequately plead materiality. Again, Defendants' argument fails. The Complaint is clear that Defendants' misrepresentations and other deceptive conduct "were important to investors because they were directly related to the viability of uBiome's business and, therefore, the likelihood that investors would obtain a return on their investments in the company." *Id.* ¶ 43. Moreover, when Defendants' fraudulent conduct came to light, uBiome filed for bankruptcy protection because it did not have a sustainable model for generating revenue. It is difficult to imagine fraudulent conduct more material than that alleged to have been directly related to the viability of uBiome's business and which ultimately led to the company's downfall.

*Fourth*, Defendants argue that the SEC failed to adequately allege sufficient deceptive conduct to establish liability under subsections (a) and (c) of Rule 10b-5 and subsections (1) and (3) of Section 17(a). Contrary to Defendants' assertion, the Complaint does include numerous detailed allegations of deceptive conduct. More fundamentally, Defendants ignore the Supreme Court's recent holding in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), that the dissemination of false and misleading statements as part of a scheme to mislead investors can satisfy subsections (a) and (c) of Rule 10b-5. This argument should also be rejected.

For each of these reasons, and as detailed below, the Court should deny Defendants' motion in its entirety.

## II.　BACKGROUND

The Commission's Complaint (ECF 1) alleges that Jessica Richman and Zachary Apte led a multi-million dollar fraud in connection with the offer and sale of securities of uBiome, Inc. ("uBiome"), a San Francisco-based private medical testing company that Defendants co-founded. As set forth in the Complaint, the fraud occurred during a 2018 "Series C" fundraising round in which approximately $60 million was fraudulently raised. Compl. ¶ 1. Defendants were enriched by $5 million each through the sale of their own uBiome shares during the round. *Id.* ¶ 30.

The Complaint asserts claims pursuant to the anti-fraud provisions of the federal securities laws – Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act of 1933 ("Securities Act"). *Id.* ¶¶ 47-52. The allegations in the Complaint describe with particularity the "who, what, where, when, and how" of Defendants' fraudulent conduct.

### A.　Defendants Co-Founded and Closely Managed uBiome Together

Defendants co-founded uBiome in October 2012. *Id.* ¶ 15. uBiome developed and performed laboratory tests that purportedly identified microorganisms in the gut and genitals. *Id.* Richman was the Chief Executive Officer and President of uBiome, and a member of uBiome's Board of Directors. *Id.* ¶ 12. Apte was the Chief Scientific Officer of uBiome and a member of the company's Board of Directors. *Id.* ¶ 13. Apte, at times, also used the title of co-CEO. *Id.*

Although their roles at uBiome were not identical, as co-founders of the company, Richman and Apte "addressed most issues together" and "closely monitored and managed every aspect of uBiome's operations together." *Id.* ¶ 16. It is therefore unsurprising that both Richman and Apte engaged in most of the conduct alleged in the Complaint (which uses the plural "Defendants" when referring to such conduct). However, where an action was performed by only Richman or Apte, the Complaint clearly alleges which of them performed the action. Defendants also had a romantic relationship and ultimately married in 2019. *Id.* During the Commission's investigation of this matter, both Richman and Apte declined to answer questions on the basis of the Fifth Amendment privilege against self-incrimination. *Id.* ¶¶ 12, 13.

### B. Defendants Engaged in a Scheme to Inflate uBiome's Revenue Through Improper Insurance Billing Practices and Mislead Investors

Beginning in or about late 2015, Defendants decided to focus uBiome's business on clinical tests (i.e., tests ordered by doctors rather than consumers) that could be billed to insurance companies. *Id.* ¶¶ 17, 18. Defendants decided to make this shift "to dramatically accelerate [uBiome's] revenue growth in advance of the company's anticipated fundraising rounds." *Id.* ¶ 18. Indeed, "Defendants, eager to demonstrate strong growth and revenue to investors in the lead up to the company's Series C fundraising round, set an internal goal of 10 percent month-over-month growth in uBiome's insurance billing volume." *Id.* ¶ 20.

In an effort to meet the aggressive growth targets they set, Richman and Apte "adopted and approved several improper billing practices that they knew, or were reckless in not knowing, fell below insurer requirements and thus, once discovered, would prompt insurers to reject reimbursement claims for uBiome's clinical tests." *Id.* ¶ 21. The Complaint sets forth several improper billing practices adopted and approved by Defendants.

For example, Richman and Apte "oversaw the design and operation of a website portal that uBiome used to connect doctors to consumers for purposes of ordering tests (the 'doctor network')." *Id.* ¶ 22. As Defendants understood, the doctor network failed to establish the doctor-patient relationship required by insurers because "the default for doctors was to approve test requests based solely on online questionnaire responses." *Id.* ¶ 23. Defendants also used the doctor network to dupe doctors into unknowingly ordering retests of consumers' old samples by having uBiome resubmit "consumers' originally reported symptoms to the doctors reviewing retest requests as if they were newly reported symptoms." *Id.* ¶ 24. As part of this effort, Apte had results of original tests withheld from the unwitting doctors. *Id.*

Moreover, Defendants (1) "had uBiome bill for some tests that had not yet been performed," (2) "ignored insurance rules that required [uBiome] to collect from consumers applicable co-pays, coinsurance, and deductibles," and (3) "misused and manipulated billing codes that are a key component of insurers' review of reimbursement claims." *Id.* ¶ 26.

The Complaint makes clear that these improper practices had a material negative impact on uBiome's business model and were important to investors. Indeed, shortly after these improper billing practices came to light, uBiome had to cease operations and file for bankruptcy protection "because it did not have a sustainable model for generating revenue." *Id.* ¶ 46.

### C. Defendants Misled Investors in uBiome's Series C Offering

Between May and September 2018, amidst the backdrop of illusory revenue growth spurred by the improper billing practices Defendants adopted and approved, Defendants led uBiome's Series C securities offering. *Id.* ¶¶ 28, 31. The offering valued uBiome at nearly $600 million and succeeded in raising approximately $59 million through the offer and sale of uBiome preferred stock to approximately 27 investors. *Id.* In addition, approximately six investors purchased uBiome convertible promissory notes during the same period for a total of more than $2 million. *Id.* ¶ 29. As noted above, Richman and Apte had large financial stakes in the Series C, as each sold $5 million of uBiome stock that they personally owned as part of the offering. *Id.* ¶¶ 1, 30.

While Richman "was the primary drafter of the pitch decks provided to investors," both she and Apte "provided prospective investors with documents in connection with the Series C offering, including pitch decks, financial information, and other promotional materials." *Id*. ¶ 32. Defendants also both "personally met and communicated with prospective investors as part of the company's fundraising efforts, including through participation in due diligence calls." *Id.* ¶ 31.

As part of their communications with prospective Series C investors, Defendants repeatedly described uBiome's clinical tests as "ordered by doctors, reimbursed by insurance." *Id.* ¶ 34. In particular, that representation was "made in various pitch decks provided by Defendants to prospective investors between May and September 2018, during the company's Series C offering." *Id.* Defendants' representation was false and misleading because it gave the "impression that [uBiome's] tests fit squarely within the well-established and lucrative healthcare insurance reimbursement model." *Id.* ¶ 35.

Contrary to this impression, as Defendants knew, or were reckless in not knowing, "uBiome was engaged in numerous improper billing practices … that would lead insurers to deny reimbursement for tests uBiome billed, once insurers caught on to the practices." *Id.* ¶ 37. uBiome's

revenue, therefore, "depended on keeping insurers in the dark about the company's improper billing practices," which "directly related to the validity of uBiome's business and, therefore, the likelihood that investors would obtain a return on their investments in the company." *Id.* ¶¶ 38, 43. Nevertheless, before the conclusion of the Series C offering, Defendants knew, but did not disclose to investors, that multiple insurers had challenged the company's practices, with one alleging that uBiome was engaged in "fraud and abuse." *Id.* ¶¶ 37, 40. Defendants also withheld these challenges from the other members of uBiome's board of directors, with Richman "falsely represent[ing] that the company had only received one such challenge." *Id.* ¶ 44.

Defendants also misled investors by touting fantastic revenue growth that Defendants knew, or were reckless in not knowing, depended on the improper billing practices they adopted and approved. *Id.* ¶ 38. The Complaint provides specific examples of each Defendants' conduct in this regard. On June 29, 2018, Apte emailed the lead Series C investor touting, with specific numbers, uBiome's growth in billable samples and revenue. *Id.* Similarly, Richman touted "[r]evenue growth of almost 900% since June 2017" in an email she sent widely to solicit Series C investors in July 2018. *Id.* ¶ 39. Defendants knew, or were reckless in not knowing, that the revenue growth they touted to investors was false and misleading because it depended upon "billing practices that … were improper and that insurers had begun flagging and rejecting." *Id.* ¶ 40. Nevertheless, "at no point during the Series C round did Defendants disclose to investors the insurer challenges to uBiome's billing practices that the company had received." *Id.*

The Complaint also describes additional false and misleading statements Defendants made to investors during the Series C round. For example, Defendants falsely represented in pitch decks they each provided to investors that uBiome's clinical tests were covered by "existing [insurance billing] codes" and "current health plan guidelines." *Id.* ¶ 41. In reality, uBiome was relying on incorrect billing codes and varied billing codes by insurer to trick insurers into reimbursing the company. *Id.* Defendants also falsely claimed in representations made to the lead Series C investor that the company's doctor network exceeded regulatory standards and had been vetted by uBiome's counsel. *Id.* ¶ 42. In truth, counsel had warned Defendants about the risk that insurers would reject the network uBiome used. *Id.*

**D.    Defendants Engaged in Additional Deceptive Conduct in Furtherance of Their Fraud**

Not only did Defendants deceive investors through making and disseminating false and misleading statements, Defendants also engaged in specific "deceptive acts to conceal facts pertinent to uBiome's practices from the company's general counsel, the uBiome board, prescribing doctors, and insurers." *Id.* ¶ 21. Each of these deceptive steps furthered their fraud on the investors. For example, although uBiome's general counsel warned Defendants in July 2017 that the questionnaire-based doctor network Defendants established would be a reimbursement risk, Defendants concealed the continued use of the questionnaire-based doctor network from uBiome's general counsel and the uBiome board. *Id.* ¶ 23. Moreover, in furtherance of Defendants' efforts to deceive doctors into ordering retests of dubious clinical utility (i.e., retests of old samples), Apte directed that written test results from the original tests of the samples be withheld from doctors. *Id.* ¶ 24. Both Defendants also (1) directed company employees to create and backdate records to make it seem as though doctor-patient consultations had occurred, and to then submit those fake records to insurance companies; and (2) concealed from uBiome's board the fact that uBiome had received challenges to the company's practices from multiple insurers. *Id.* ¶¶ 25, 44.

## III.   LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering whether the complaint states a claim, the court must "presume all factual allegations of the complaint to be true and to draw all reasonable inferences in favor of the nonmoving party." *SEC v. Sablock*, No. 08 Civ. 4238 CRB, 2009 WL 10690310, at *2 (N.D. Cal. Feb. 18, 2009) (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).

## B.    Federal Rule of Civil Procedure 9(b)

Rule 9(b) provides, in part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In securities fraud actions, the plaintiff must plead with particularity the circumstances constituting the fraud so that the defendant can prepare an adequate answer. *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995). This notice requirement is satisfied by allegations of the "time, place and nature of the alleged fraudulent activities." *Fecht*, 70 F.3d at 1082 (quoting *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973)); *accord Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir. 1996). When a false or misleading statement is alleged, the plaintiff must set out what is false or misleading about the statement. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc). However, unlike private securities plaintiffs, the Commission need only plead scienter generally. *See SEC v. Berry*, 580 F. Supp. 2d 911, 921 (N.D. Cal. 2008) (citations omitted). The "more rigorous pleading requirements under the PSLRA, which go beyond the Rule 9(b) requirements only apply to private securities fraud actions; they do not apply to a case … brought by the SEC." *SEC v. ICN Pharm., Inc.*, 84 F. Supp. 2d 1097, 1099 (C.D. Cal. 2000) (quotations and citations omitted).

## IV.    ARGUMENT

### A.    The Complaint Is Not a "Shotgun" Pleading

Defendants first contend that the two counts in the Complaint, which charge Defendants with violating the anti-fraud provisions of the Exchange Act and the Securities Act, are impermissibly vague because both counts incorporate all the factual allegations. (MTD at 5-6.) Defendants complain that they cannot understand "which alleged conduct by which defendant constitutes violations of the statutes' various sections" and that, as a consequence, the complaint is a "shotgun" pleading that must be dismissed. (*Id.* at 6.) These arguments should be rejected because all the factual allegations, which detail Defendants' fraudulent scheme to deceive investors about uBiome's business model, apply with equal force to each of the two fraud claims against Defendants.

Courts have recognized that a pleading may properly incorporate every preceding factual paragraph into each subsequent claim so long as those factual paragraphs provide support for the

claims. *See SEC v. City of Miami*, 988 F. Supp. 2d 1343, 1354-55 (S.D. Fla. 2013) (ruling that the SEC's complaint, which incorporated by reference all the general allegations into the causes of action, was not a "shotgun" pleading because the "general allegations support each claim for relief and identify the relevant events, misrepresentations, and omissions advanced by the SEC"); *see also SEC v. Daifotis*, No. 11 Civ. 137 WHA, 2011 WL 2183314, at *3 (N.D. Cal. June 6, 2011) (rejecting the argument that plaintiff should not be allowed to "set out all of their fact allegations and then follow such allegations with their legal claims"). Indeed, without incorporating supporting allegations, it would be a completely "inefficient exercise" for "the SEC [ ] to repeat verbatim, the incorporated paragraphs into each of the [charged] counts." *City of Miami*, 988 F. Supp. 2d at 1355.

That is the case here. The factual allegations apply equally to the Commission's Section 10(b) and Section 17(a) claims, both of which sound in fraud. It is well-established that "essentially the same elements are required under Section 17(a)(1)–(3) . . . as under section 10(b) and Rule 10b–5." *SEC v. Alexander*, 115 F. Supp. 3d 1071, 1083 (N.D. Cal. 2015) (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)) (alteration omitted); *see also SEC v. Tolstedt*, No. 20 Civ. 7987 JST, 2021 WL 3415189, at *4 (N.D. Cal. June 28, 2021) ("The Supreme Court has explained that there is 'considerable overlap' between Section 17(a), Section 10(b), and Rule 10b-5." (quoting *Lorenzo*, 139 S. Ct. at 1102)). Each of the factual paragraphs in the Complaint sets forth the fraudulent conduct, deceptions, misrepresentations,[1] and relevant background information that support the fraud claims. The allegations are organized by headings and subparagraphs setting forth a detailed recitation of Defendants' roles in the wrongdoing that forms the basis for the fraud-related claims.

Indeed, contrary to Defendants' argument that the Complaint does not distinguish between the actions of Richman and Apte (MTD at 7), the Complaint clearly alleges which actions were

---

[1] Defendants complain that the Complaint alleges "apparently distinct theories involving at least fraudulent misrepresentations and scheme liability." (MTD at 6.) They are wrong. As explained in detail in Section IV. D., *infra*, the Supreme Court held in *Lorenzo* that the "dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5." 139 S. Ct. at 1100. Because the false and misleading statements alleged in the Complaint support liability under all three prongs of the anti-fraud provisions, the SEC need not plead different or "distinct" facts to prevail on the different subsections.

performed by both Defendants, and which ones were performed by one Defendant. For example, the Complaint clearly alleges that both Defendants worked on the creation of the doctor network, *see* Compl. ¶¶ 22-23; gave directions to uBiome employees to create and backdate records in response to requests from insurance companies, *see id.* ¶ 25; and made false and misleading statements to investors regarding uBiome's business model and its growth, *see id.* ¶¶ 34, 35, 38, 41. It is not surprising that many of the actions alleged in the Complaint were performed by both Defendants because they were co-founders of uBiome, had a close personal relationship, and often made decisions together. *See id.* ¶¶ 15-16. However, when they took individual actions, the Complaint specifies those actions. *See, e.g., id.* ¶¶ 24 (Apte), 27 (Richman), 32 (Richman), 38 (Apte), 39 (Richman). Accordingly, "[t]he factual allegations are relatively brief and clear, and a more detailed statement of how those facts apply to each claim is not necessary to enable the Defendants to respond to the allegations." *SEC v. Das*, No. 10 Civ. 102, 2010 WL 4615336, at *6 (D. Neb. Nov. 4, 2010).[2]

The cases cited by Defendants do not support their argument that the Complaint is a "shotgun" pleading. Defendants rely on *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (cited by MTD at 6), for the proposition that a plaintiff cannot incorporate all preceding allegations into its claims for relief. *Wagner*, however, concerned a class action complaint, pled under the Private Securities Litigation Reform Act ("PSLRA"), that failed to connect its 175 paragraphs of factual allegations with the causes of action "in any meaningful way." *See id.* at 1279-80. In contrast to *Wagner*'s extreme example of poor pleading, the Complaint in this action—which is not subject to the PSLRA—is neither rambling nor confusing. The allegations in this case all sound in fraud and appear in less than 46 substantive paragraphs, which are organized by headings that set forth a detailed narrative of the particular acts committed by Defendants throughout the scheme. *See*

---

[2] The cases Defendants rely on in support of their argument that the Complaint does not sufficiently distinguish between the acts of the two Defendants stand in stark contrast to the facts here. *See 818 Media Prods., LLC v. Wells Fargo Bank*, 16 Civ. 9427, 2017 WL 3049565, at *1, 4 (C.D. Cal. Feb. 9, 2017) (involving claims against eight individual and entity defendants and a complaint that "lump[ed] all [eight] Defendants together" and otherwise assigned them identical roles in the fraud); *Destfino v. Reiswig*, 630 F.3d 952, 954, 958-59 (9th Cir. 2011) (dismissing complaint with "everyone did everything" allegations against *forty* individual and entity defendants). The complaints in those cases are a far cry from the Complaint here, which involves just two defendants and describes their roles in detail.

*Das,* 2010 WL 4615336, at *6 (distinguishing *Wagner* because the SEC's complaint "does not contain hundreds of paragraphs, nor do the SEC's allegations revolve around numerous defendants or voluminous documents"). Meanwhile, *SEC v. Fraser,* No. 09 Civ. 443, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009), which Defendants also cite (MTD at 6), is distinguishable by the fact that the complaint's general allegations were incorporated into multiple categories of different claims beyond fraud claims. *Fraser,* 2009 WL 2450508, at *4-5 (complaint included claims for violations involving fraud, reporting requirements, record-keeping, internal controls, falsification of records, false statements to accountants, and certification violations).[3]

## B.    The Complaint Satisfies Rule 9(b)'s Pleading Requirements

### 1.    The Complaint Provides Sufficient Notice for Defendants to Understand the Allegations Against Them

Rule 9(b) "only requires the identification of the circumstances constituting the fraud so that the defendant can prepare an adequate answer from the allegations." *Walling,* 476 F.2d at 397 (citations omitted); *see also Fecht,* 70 F.3d at 1082. This requirement is satisfied by allegations of the "time, place and nature of the alleged fraudulent activities," *Walling,* 476 F.2d at 397; in other words "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)). The court's Rule 9(b) inquiry is, therefore, whether a defendant is able to understand the allegations and prepare an answer. The Complaint here clearly meets that standard.

### 2.    The Complaint Adequately Alleges Fraudulent Misrepresentations

Contrary to Defendants' claim that the Complaint fails to allege with sufficient particularity fraudulent misrepresentations in connection with a securities offering (MTD at 7), the Complaint alleges the "who, what, when, where, and how" of Defendants' fraudulent misrepresentations.

---

[3] Defendants also include a quotation from *Bautista v. Los Angeles Cty.,* 216 F.3d 837, 840 (9th Cir. 2000) (cited by MTD at 6), but *Bautista* was a workplace discrimination case in which the complaint failed to plead facts about the discriminatory practices for each of the named plaintiffs, *see id.* The complaint also failed to plead separate counts even though "each plaintiff's claim [was] being founded upon a separate transaction or occurrence." *Id.* None of the issues present in *Bautista* is relevant to this case.

In particular, Defendants argue that the Complaint's allegations regarding material misrepresentations in "various pitch decks provided by Defendants to prospective investors between May and September 2018" fails to provide the particularity required by Rule 9(b). (MTD at 9 (citing Compl. ¶ 34).) Not so. Indeed, the Complaint's allegations regarding misrepresentations in the pitch decks clearly set forth the who (Richman and Apte on the one hand, and "prospective investors" in uBiome's Series C round on the other), what (false and misleading representations that uBiome's clinical tests were "ordered by doctors, reimbursed by insurance"), where ("in various pitch decks"), when ("between May and September 2018") and how (Defendants provided the pitch decks with the misrepresentations to prospective investors) required by Rule 9(b). Compl. ¶¶ 34, 35.[4]

Moreover, the Complaint explains in detail why these misrepresentations were fraudulent. The misrepresentations "gave the false and misleading impression that [uBiome's] tests fit squarely within the well-established and lucrative healthcare insurance reimbursement model." *Id.* ¶ 35. In truth, as Defendants "knew, or were reckless in not knowing," uBiome was "engaged in numerous improper billing practices . . . that would lead insurers to deny reimbursement…." *Id.* ¶ 37. uBiome's ability to generate revenue thus "depended on keeping insurers in the dark about the company's improper billing practices." *Id.* ¶ 38. Those improper billing practices are also described in detail in the Complaint. *Id.* ¶¶ 20-27. *See In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 357 (S.D.N.Y. 2008) ("where a company puts at issue the cause of its financial success, it may mislead investors if the company fails to disclose that a material source of its success is the use of improper or illegal business practices.") (citing *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 393-94, 400-01 (S.D.N.Y. 2005) (where statements put the sources of revenue from trades of NYSE specialists at issue, the alleged failure to disclose that the true source of that revenue was improper trading could give rise to liability) and *In re Providian Fin. Corp. Sec. Litig.*, 152 F. Supp. 2d 814, 824-25 (E.D. Pa. 2001) (where defendants' statements attributed income and revenue successes to "customer-focused approach," complaint stated a claim under § 10(b) through specific allegations

---

[4] Defendants argue that Apte's "role" with respect to investor pitch decks is unclear (MTD at 14), but the Complaint alleges that he (along with Richman) provided investors with the fraudulent pitch decks. (Compl. ¶¶ 32, 34, 41.)

that illegal or fraudulent business practices were the hidden cause of the company's financial success)).

Defendants rely on *SEC v. Francisco*, 262 F. Supp. 3d 985 (C.D. Cal. 2017), to argue that the Complaint should be dismissed because it includes "vague, hedging language" such as "approximately" and "typically." (MTD at 8 (quoting *Francisco*, 262 F. Supp. 3d at 989).) However, Defendants misstate the ruling of *Francisco*, which faulted the SEC for lumping together hundreds of offerings and describing them with generalities.

In *Francisco*, the SEC alleged that the defendants had engaged in a "scheme to defraud at least 131 investors in 19 different offerings" over three-and-a-half years. *SEC v. Francisco*, 16 Civ. 2257, 2016 WL 7455810, Compl. ¶ 3 (C.D. Cal. Dec. 27, 2016) ("*Francisco* Compl."). The original complaint used words like "typically" to allege broad similarities between "some or most of the offerings," but it did "not delineate the nature of the fraud in each particular offering." *Francisco*, 262 F. Supp. 3d at 990. For example, the original complaint described what the defendants' investment memoranda "typically state[d]" about a restaurant-chain project, but provided no specific details about the eight different offerings related to that project. *See id.* at 989 (citing *Francisco* Compl. ¶ 48); *Francisco* Compl. ¶ 21. The court dismissed the original complaint with leave to amend for failing to allege "which statements were made with which offerings when and through which means." *Francisco*, 262 F. Supp. 3d at 990. In addition, the court ruled that the original complaint did not clearly allege "the extent of [the individual defendant's] role in formulating, approving, and distributing such statements, and mingling and diverting funds." *Id.*

In contrast, the Complaint in this case concerns a single offering, namely, the Series C funding round in 2018. All the factual allegations regarding the improper billing practices at uBiome, and the false and misleading statements made by Defendants to investors, apply to that single offering. Accordingly, the *Francisco* court's warning that a complaint cannot lump multiple offerings together with broad generalizations is not relevant here. Moreover, unlike the deficient original complaint in *Francisco*, the Complaint here contains numerous allegations about Defendants' roles in the fraud. For example, the Complaint alleges that Richman was the primary drafter of pitch decks for investors that contained false and misleading statements, *see* Compl. ¶¶ 32, 34, 41; Apte directed

uBiome employees to withhold information related to retests from doctors, *see id.* ¶ 24; and both Defendants directed uBiome employees to create and backdate records to send to insurance companies, *see id.* ¶ 25. These allegations are more than sufficient to "delineate the nature of the fraud in [this] particular offering," and each Defendant's role in that fraud. *Francisco*, 262 F. Supp. 3d at 990.

The Complaint also includes specific allegations, pleaded with particularity, regarding Defendants' "touting fantastic revenue growth while, at the same time, concealing from investors that uBiome's revenue depended on keeping insurers in the dark about the company's improper billing practices." Compl. ¶ 38. The Complaint describes the "who, what, when, where and how" with respect to those misrepresentations. As alleged in the Complaint, Apte represented to the lead Series C investor (the "who") that uBiome had seen fantastic revenue growth, including "3.4x the billable samples and revenue" it had in November 2017 (the "what") in an email he sent (the "where" and "how") on June 29, 2018 (the "when"). *Id.* The Complaint also alleges that Richman represented to prospective Series C investors (the "who") that uBiome had achieved "[r]evenue growth of almost 900% since June 2017" (the "what") in an email she sent (the "where" and "how") in July 2018 (the "when"). *Id.* ¶ 39.

Defendants quibble with these allegations, arguing that "the Complaint does not allege who of the dozens of investors received the emails or whether or how the emails were material to recipients' investment decision, or for the second email, when it was sent (other than a month-long period)." (MTD at 8.) This argument fails. The Ninth Circuit has ruled that, in SEC actions to enjoin securities violations, the SEC need not plead that any investor actually received and relied on the false statements. *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993); *see also SEC v. Med. Capital Holdings*, 09 Civ. 818, 2010 WL 809406, at *3 (C.D. Cal. Feb. 24, 2010) (rejecting defendants' argument that an SEC complaint should be dismissed for failure to identify the defrauded investors). Thus, the SEC is not required under Rule 9(b) to plead which particular investors were injured by their reliance on the false statements.

Defendants next argue that the Complaint fails to allege with particularity the numerous improper billing practices that made the misrepresentations described in the Complaint (and above)

false and misleading. (MTD at 13-20.) As an initial matter, Defendants incorrectly suggest that the Complaint must allege the underlying improper billing practices were independently fraudulent. But the relevance of the improper billing practices to the SEC's securities fraud claims is that, as described above, they constituted deceptive conduct that made Defendants' statements to investors false and misleading. Furthermore, the Complaint is clear that the improper billing practices "would lead insurers to deny reimbursement for tests uBiome billed, once insurers caught on to the practices." Compl. ¶ 37. This was important to investors because uBiome's ability to secure reimbursements from insurers was directly related to the viability of its business model and the likelihood that investors would obtain a return on their investments in the company. *Id.* ¶ 43. It is not necessary for the Complaint to allege that the practices were independently illegal. *See In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d at 357 ("where a company puts at issue the cause of its financial success, it may mislead investors if the company fails to disclose that a material source of its success is the use of improper *or* illegal business practices." (emphasis added)).[5] Moreover, despite Defendants' arguments to the contrary, "the SEC is not required to plead detailed evidence concerning each and every fraudulent act alleged." *SEC v. Levin*, 232 F.R.D. 619, 624 (C.D. Cal. 2005) (citing *Cooper*, 137 F.3d at 627).

Moreover, in arguing that the Complaint lacks particularity, Defendants frequently mischaracterize or ignore its allegations. For example, Defendants contend that "the Complaint does not define what it means by 'retest.'" (MTD at n.7 (citing Compl. ¶ 24).) Yet the very paragraph of the Complaint to which Defendants cite does indeed explain that "retests" were "retests of consumer's old samples." Compl. ¶ 24. As another example, Defendants assert that "the default for doctors was to consider only a questionnaire" is "a fact not pled." (MTD at 15.) But the Complaint does indeed plead that fact: "Defendants understood that the default for doctors was to approve test

---

[5] It is worth noting that the Court recently ruled that the United States had alleged "detailed enough" facts to "establish that Apte and Richman committed a health care fraud offense" in its civil forfeiture complaint against two condominiums owned by Defendants. *United States v. Two Condos. Located at 465 Ocean Drive, Units 315 and 316, Miami Beach, Fla. 33139*, No. 21 Civ. 4060 CRB (N.D. Cal. May 27, 2021), Order Granting Motion to Dismiss Civil Forfeiture Complaint (ECF 34) at 7. The relevant allegations in that complaint were less detailed than those in the SEC's Complaint. *Compare id.*, Forfeiture Compl. (ECF 1), ¶¶ 12, 13, 18, *with* Compl. ¶¶ 17-27.

requests based solely on online questionnaire responses" without any consultation or other further interaction with consumers. Compl. ¶ 23. Seizing on the word "default," Defendants maintain the Complaint does not allege that doctors actually ordered tests based solely on questionnaires. (MTD at 15, n.10.) But the Complaint also alleges that Defendants continued uBiome's use of the "questionnaire-based" doctor network after the company's general counsel warned them against it, and had fake records submitted to insurers "to make it seem as though doctor-patient consultations had occurred." Compl. ¶¶ 23, 25. Defendants also assert that the allegation that they "directed" employees to submit fake records to insurers does not amount to alleging the records were actually submitted. (MTD at 16.) But that allegation is clear from context, as the same paragraph of the Complaint alleges that Defendants "engaged in [a] deceptive[] act to mislead insurers about the doctor network." *Id.* ¶ 25.[6]

Contrary to Defendants' contention, the Complaint adequately pleads with particularity Defendants' fraudulent conduct, including fraudulent misrepresentations. Defendants' motion should therefore be denied.

### C. The Complaint Adequately Pleads Materiality

Defendants argue that the Complaint "fails to place the alleged fraudulent conduct in the context of uBiome's overall business" and therefore fails to show how Defendants' conduct was material to investors. (MTD at 13, 17.) That is false.

"Materiality" exists "if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005); *Basic v. Levinson*, 485 U.S. 224, 231-32 (1988) (holding that a misrepresentation is material if there is a substantial likelihood that a reasonable investor would consider facts it omits important in making an investment

---

[6] Notably, Defendants' statement of the facts cites to paragraphs of the Complaint that say nothing to support the "facts" they claim are true. For example, Defendants cite paragraph 14 of the Complaint to support factual assertions regarding "uBiome's first product … Explorer." (MTD at 2.) That paragraph of the Complaint, however, alleges that Defendants founded uBiome and that uBiome operated as a medical testing company before it went bankrupt. Compl. ¶ 14. It says nothing, nor does any other paragraph of the Complaint, regarding a product called Explorer.

decision). Whether statements are material or misleading are generally issues reserved for the trier of fact. *See, e.g., Fecht*, 70 F.3d at 1081; *SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007). Here, the Complaint includes more than sufficient allegations to allow a trier of fact to conclude that Defendants' misrepresentations and other fraudulent conduct were material.

The Complaint alleges that "Defendants' misrepresentations and other deceptive conduct regarding uBiome's business model and ability to generate revenue were important to investors because they were directly related to the viability of uBiome's business and, therefore, the likelihood that investors would obtain a return on their investments in the company." Compl. ¶ 43. *See No. 84 Empl'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 935 (9th Cir. 2003) (material omission where airline painted rosy picture of financial prospects, while knowing it had undisclosed specific problems, including maintenance issues and an FAA investigation); *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 769 (11th Cir. 2007) (representations regarding favorable business prospects were materially misleading where defendants knew their business model was not succeeding).

The Complaint further alleges that the improper billing practices described in the Complaint led to "several [insurers] seeking clawback payments," Compl. ¶ 44, and that when the scope of the practices came to light, uBiome "ceased operations and filed for bankruptcy protection because it did not have a sustainable model for generating revenue," *id.* ¶ 46. In other words, the improper billing practices adopted and approved by Defendants led to the bankruptcy of the company. *See SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980) ("Surely the materiality of information relating to financial condition, solvency and profitability is not subject to serious challenge.").

Defendants also contend that, to adequately plead materiality, the Complaint must quantify the specific impact of each improper billing practice alleged. (*See, e.g.,* MTD at 12 (arguing SEC must quantify number of retests improperly ordered, billed, and the amount of revenue such retests generated), 16 (arguing SEC must quantify number of falsified records Defendants directed be created and provided to insurers), 17 (arguing SEC must quantify, among other things, how much revenue was attributable to the doctor network).) Defendants' argument is contrary to Supreme Court precedent. In *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 36-37 (2011), the Supreme Court

found that the district court had "erred in requiring an allegation of statistical significance to establish materiality." The Supreme Court held that a securities fraud complaint against a pharmaceutical company adequately pleaded materiality where it included allegations regarding certain adverse events associated with a particular pharmaceutical sold by the company even though the complaint did not include allegations regarding the statistical significance of the alleged adverse events. *Id.* at 43-44 (finding that materiality could be established through a "contextual inquiry"). Here, the Complaint makes plain the materiality of Defendants' fraudulent conduct. The SEC need not further quantify or otherwise allege the statistical significance of each of the improper billing practices adopted and approved by Defendants. *See SEC v. Reyes*, 491 F. Supp. 2d 906, 910 (N.D. Cal. 2007) (finding "[t]hat an expense is less significant does not mean it is immaterial" in rejecting defendant's materiality argument in stock option backdating case).

### D.     The Complaint Adequately Alleges Deceptive Conduct under *Lorenzo*

Finally, Defendants argue that the Complaint fails to allege sufficient facts with particularity to support a claim for "primary scheme liability." (MTD at 21.) Defendants' argument ignores Supreme Court precedent and should be rejected.

In *Lorenzo*, the Supreme Court held that the "dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5." 139 S. Ct. at 1100. As "[e]ssentially the same elements are required under Section 17(a)(1)–(3)" as under section 10(b) and Rule 10b–5, *Monarch Funding Corp.,* 192 F.3d at 308, it follows that the dissemination of false or misleading statements can also fall within the scope of subsections (1) and (3) of Section 17(a). Thus, pre-*Lorenzo* case law holding that fraudulent conduct separate and apart from the dissemination of false and misleading statements is required to establish liability under Rule 10b-5(a) or (c) or Section 17(a)(1) or (3) is no longer valid law. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. June 16, 2021) (recognizing that *Lorenzo* forecloses argument "that Rule 10b-5(a) and (c) claims cannot overlap with Rule 10b-5(b) statement liability claims").

Despite the Supreme Court's opinion in *Lorenzo*, Defendants cite a 2009 opinion from the District of New Jersey setting forth the elements for "primary scheme liability." (MTD at 21 (citing *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 350 (D.N.J. 2009)).) In so doing, Defendants appear

to suggest that the SEC must allege conduct separate and apart from misrepresentations to meet the elements of Section 17(a)(1) and (3) and Rule 10b-5(a) and (c). Defendants' argument fails in light of *Lorenzo*.

Nevertheless, the Complaint does allege numerous deceptive acts beyond the dissemination of false or misleading statements. For example, the Complaint alleges that Defendants engaged in "deceptive acts to conceal facts pertinent to uBiome's practices from the company's general counsel, the uBiome board, prescribing doctors, and insurers." Compl. ¶ 21. In particular, the Complaint alleges, among other things, that Defendants concealed the continued use of the questionnaire-based doctor network from uBiome's general counsel and the uBiome board (*id.* ¶ 23), acted to deceive doctors by making consumers' retest requests appear to be requests for tests on new samples (*id.* ¶ 24), and directed employees to create and backdate records and then to submit those fake records to insurers (*id.* ¶ 25.) *See SEC .v Bardman*, 216 F. Supp. 3d 1041, 1052 (N.D. Cal. 2016) (finding that lying to auditors was a deceptive act supporting "scheme liability" claim).[7]

## V.   **CONCLUSION**

For each of the reasons set forth above, the Court should deny Defendants' motion to dismiss the Complaint.

Dated: September 27, 2021                Respectfully submitted,


                                         /s/  Bernard B. Smyth
                                         Bernard B. Smyth
                                         David Zhou
                                         Thomas J. Eme
                                         Attorneys for Plaintiff
                                         SECURITIES AND EXCHANGE COMMISSION

---

[7] In their argument that the Complaint fails to allege deceptive conduct to support a claim for "scheme liability" (MTD at 21-22), Defendants again contend that the Complaint fails to adequately distinguish each Defendant's role in the conduct at issue. For the reasons described above, that argument fails.