Hon. Laurel Beeler                                                    October 13, 2021
Room B – 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

**Re:**   *SEC v. Jessica Richman and Zachary Apte*; **Case No. 21-CV-01911-CRB**

Dear Judge Beeler:

      Pursuant to the Court's September 17, 2021 Order (Dkt. 44) and the Court's Standing Order (Dkt. 44-1), the parties hereby submit this statement regarding Defendants' proposed Motion to Quash Non-Party Subpoenas *Duces Tecum* and for a Protective Order, which was previously filed with the Court, *see* Dkt. 42. That motion concerns subpoenas the SEC served on Bank of America, J.P. Morgan Chase Bank, and Fidelity Brokerage Services, and that seek Defendants' and related entities' bank and investment information (the "Subpoenas"). *See* Dkt. 42-1. Because lead counsel for Dr. Richman is located outside California, the parties met and conferred by telephone and through correspondence. The parties were unable to resolve their dispute.

**Defendants' Position:** ***The Subpoenas Should Be Quashed and a Protective Order Issued.***

      Defendants respectfully request the Court quash the Subpoenas and issue a protective order.[1] Rule 45 subpoenas are subject to Rule 26(b)(1)'s relevancy standard, which permits parties to obtain discovery regarding any matter that is "relevant to any party's claim or defense and proportional to the needs of the case[.]" The Subpoenas fail this standard. They seek personal and confidential financial records for *three years after* the violations the SEC alleges. The Subpoenas also seek financial records of two companies that are not referenced in the Complaint and have no connection to the SEC's allegations. Finally, the SEC's requests are disproportionate because the SEC already possesses most of the records requested, though the SEC refuses to discuss the extent to which its Subpoenas are duplicative, how it obtained those records, or why it seeks them anew.

      The Subpoenas seek irrelevant information. Defendants' financial records that postdate when the SEC alleges Defendants' securities fraud scheme ended (Sept. 2018) or that postdate when Defendants left uBiome (June 2019), are irrelevant to the SEC's claims. The requests for financial information associated with nonparty corporate entities are also irrelevant. The SEC does not even mention those companies in the Complaint. Absent any basis to connect the Defendants' post-uBiome conduct or the companies to the SEC's allegations—and there is none—its demand for Defendants' and the companies' financial records from July 2018 *to the present* violates Rule 26(b)'s relevancy and proportionality requirements. *See, e.g.*, *S.E.C. v. Laura*, 2020 WL 5152873, at *3 (E.D.N.Y. Aug. 31, 2020) (quashing subpoenas requesting financial records because the SEC

---

[1] Defendants have standing to move the Court to quash the Subpoenas and to impose a protective order because they have a privacy interest in their confidential bank records. *See Knoll, Inc. v. Moderno, Inc.*, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) ("[A] party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed."); *City of San Jose v. JUM Global*, WL 4520981, *2-3 (N.D. Cal. Sept. 21, 2018) (defendant had standing to challenge subpoena seeking its confidential financial records served on a third-party bank).

did not satisfy a "threshold relevance burden"); *JUM Global*, 2018 WL 4520981, *3 (quashing subpoenas seeking temporally irrelevant information); *Koh v. S.C. Johnson & Son, Inc.*, 2011 WL 940227, at *6 (N.D. Cal. Feb. 18, 2011) (granting protective order for subpoenas served on financial entities that were overbroad and irrelevant).

The SEC claims the Subpoenas are necessary to substantiate its "claims for injunctions, disgorgement and civil penalties." This argument conflates "claims" with remedies. Disgorgement provides for the return of "*ill-gotten gains*" obtained by a "*wrongdoer*;" thus it is a remedy, not an element of any "claim." *See Liu v. SEC*, 140 S. Ct. 1936, 1944 (2017); *Kruse v. Repp*, 2020 WL 1311749, *34 (S.D. Iowa March 20, 2020) ([T]the *claim alleged* is not the same as the *relief sought*."). It also is well-settled that a party cannot take post-judgment asset discovery before it has established liability. *See Sierrapine v. Refiner Prod. Mfg., Inc.*, 275 F.R.D. 604, 610 (E.D. Cal. 2011) ("The relevancy requirement is not met when a party wants to know the opposing party's assets prejudgment to determine what assets are available for attachment should [it] succeed.").[2]

The SEC argues that because Defendants may have transferred funds abroad, the Subpoenas are necessary to evaluate whether the SEC should seek an asset freeze or other pre-judgment relief. But this confuses the SEC's role as a regulator with its status as a litigant. The SEC has authority to investigate suspected securities laws violations, but it lacks similar power in a civil case where it, like all parties, is bound by the Federal Rules. *See SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414 (S.D.N.Y. 2009) ("Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action."). The Rules do not include an "SEC exception" allowing for discovery of post-judgment attachment before discovery has commenced. *Cf. SEC v. Merkin*, 283 F.R.D. 689, 696 (S.D. Fla. 2012) (government subject to the same discovery rules as private litigants).

Defendants recognize that a limited portion of the requested records may be relevant. However, the SEC already obtained the majority of those records through prior administrative subpoenas served on *the same financial institutions* in late 2019. The SEC additionally possesses Defendants' financial records that postdate those same subpoenas. In a prior filing, a staff accountant declared she had "reviewed certain bank records" "in the Commission's files," including "the monthly bank statements … for Jessica Richman … and Zachary Apte … for the period beginning in the second half of 2019 through February 2021." *See* Dkt. 15, ¶¶ 2-3.

During the parties' meet and confer, Defendants advised the SEC that they were willing to limit their proposed motion's scope to the extent the Subpoenas sought non-duplicative and temporally relevant materials. Defendants thus asked the SEC what records the agency already possessed. During a phone call, the SEC agreed to provide Defendants an accounting of those records. The SEC changed its tune, however, when Defendants inquired how the SEC had obtained

---

[2] The cases cited by the SEC are inapposite and do not support the propositions for which they are cited. *See e.g.*, *SEC v. Newpoint Fin. Servs., Inc.*, 2010 WL 11484382, at *3 (C.D. Cal. Nov. 5, 2010) (denying motion to quash where defendant consented to liability and post-judgment asset discovery); *In re Suzuki*, 2014 WL 6908384, at *4 (D. Haw. Dec. 5, 2014) (denying motion to quash  subpoena seeking information related to assets enjoined via preliminary injunction).

records that postdated the SEC's administrative subpoenas. The SEC initially indicated it had obtained the records from the Department of Justice, but when Defendants asked how the DOJ had provided the records, the SEC declined to respond and refused even to acknowledge its prior disclosure. Then, late afternoon yesterday—*after* Defendants had drafted this submission—the SEC again changed course, producing the bank records that Defendants had repeatedly asked the SEC to identify in prior discussions. When Defendants suggested the parties meet and confer further, the SEC declined, insisting the matter be presented to the Court immediately before Defendants could evaluate the SEC's 5,500-page production.[3]

When pressed on why it had subpoenaed records it already possessed, the SEC stated it wanted "to obtain records directly from the banks" to "establish their authenticity." That justification does not hold water. First, the SEC obtained records directly from the banks in response to its prior subpoenas. Second, the SEC never asked Defendants to stipulate to authenticity—even when Defendants advised they would be amenable to such a request. The SEC's purported need for irrelevant, "updated" records does not explain its insistence on subpoenaing records it already possesses. It is clear, however, that the SEC possesses records for which Defendants never received Right to Financial Privacy Act notices. *See* 12 U.S.C. § 3402. The SEC may not use Rule 45 subpoenas to obtain "clean copies" of records it already possesses. *See* Dkt. 42 at 10; *cf. Hunt v. S.E.C.*, 520 F. Supp. 580, 594-97 (N.D. Tex. 1981) (discussing impropriety of the SEC's use of administrative subpoena "update letters" sent to financial institutions without notice). Defendants do not know why the SEC insists on subpoenaing records it possesses because the SEC refuses to discuss this issue to limit the scope of the parties' dispute.

**The SEC's Position: *Defendants' Motion to Quash Should Be Denied***

The SEC served three Rule 45 subpoenas seeking Defendants' financial records in an effort to determine, among other things, whether Defendants are actively dissipating assets that would otherwise be available to satisfy a judgment in this case for the benefit of harmed investors.

As alleged in the SEC's Complaint, Richman and Apte each sold about $5 million of personal shares during a fraudulent securities offering they orchestrated in 2018 that deprived investors of about $60 million. Between that offering and February 2021, Defendants transferred at least $1 million to foreign locations. *See* Boodoo Decl. (ECF 15) ¶ 4. That is because Defendants left the United States in July 2020—after being subpoenaed for documents and testimony by the SEC—and went to Germany, where they reside as fugitives from criminal charges for securities fraud and money laundering. *See* Mot. Alt. Serv. (ECF 13) at 3; *United States v. Apte & Richman*, No. 21 Cr. 116 (CRB) (ECF 1) at 36, 39. Their previous court filing makes clear that they will continue to move money offshore, beyond the reach of the Court and harmed investors. *See* Def. Opp. to Mot. Alt. Serv. (ECF 18) at 5-6 ("The SEC offers no facts to suggest that the use of money in Germany by individuals living in Germany is suspicious, problematic…. [T]he SEC alleges no more than that funds have been transferred to a country in which Dr. Apte and Dr. Richman are

---

[3] In its response, the SEC misleadingly states it had identified its records in initial disclosure emails. The disclosures were *mailed* on 10/7/2021, provide only bates numbers, and do not identify accounts or date ranges. The SEC's emails did not describe the documents the SEC possesses, either.

currently residing….").

Information about Defendants' assets, including the dissipation of such assets, is highly relevant to the SEC's claims for injunctions, disgorgement of Defendants' ill-gotten gains, and civil money penalties, Compl. (ECF 1) at 12-13, and to counter possible defenses such as inability to pay penalties. (The SEC must anticipate such defenses because Defendants both invoked their Fifth Amendment privilege in the SEC's investigation. *Id.* ¶¶ 12-13.) Thus, on September 2, 2021, the SEC served Rule 45 subpoenas on Bank of America, JP Morgan Chase Bank, and Fidelity Brokerage Services (the "Subpoenas") seeking financial records for accounts in Defendants' names for a time period designated as "July 1, 2018 to the present." In addition, the Subpoenas called for account records of Amplicon LLC, an entity owned and controlled by Richman, and Petrichor Properties LLC, an entity owned and controlled by Apte, for the same time period. In 2019, Defendants transferred money, including some ill-gotten gains from their sales of personal shares, into Amplicon and Petrichor accounts at another bank.

The Court should deny Defendants' motion to quash. *First,* Defendants contend that the Subpoenas seek irrelevant information because they call for records created after Defendants were terminated from uBiome in June 2019. This argument ignores their ill-gotten gains, and the dissipation after they left uBiome, which are relevant and discoverable under Rule 26(b)(1). *See In re Subpoena to PayPal Holdings, Inc.*, No. 20 Misc. 80041 (AGT), 2020 WL 3073221, at *2 (N.D. Cal. June 10, 2020) (citing Fed. R. Civ. P. 26(b)(1)).

The SEC is seeking permanent injunctions, disgorgement, and civil penalties, and the information about Defendants' transfers of assets overseas is directly relevant to each of these claims and, crucially, to the SEC's ability to recover funds for harmed investors. *See SEC v. Newpoint Fin. Servs., Inc.*, No. 10 Civ. 124, 2010 WL 11484382, at *3 (C.D. Cal. Nov. 5, 2010) (ruling that subpoenas seeking financial records were relevant because "[a] claim for relief consists of both the claim, and a demand for relief," which includes disgorgement and civil penalties (internal citations and quotation marks omitted)); *In re Suzuki*, No. 14 Civ. 516, 2014 WL 6908384, at *4 (D. Haw. Dec. 5, 2014) (refusing to quash a subpoena seeking bank records of person who allegedly received fraud proceeds because that information "is relevant to the claims, remedies, and resolution of the underlying action").

The SEC also needs that information to determine whether a motion for additional relief, such as an asset freeze, would be appropriate. *See* Compl. at 13-14 (Prayers for Relief VI and VII); *see also SEC v. Liu*, 851 Fed. App'x 665, 668 (9th Cir. 2021) (affirming a pre-judgment asset freeze, which prevents "'a defendant from dissipating assets in order to preserve the possibility of equitable remedies'" (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988))). Contrary to Defendants' contention, the SEC's duty to protect harmed investors does not end with the filing of its complaint, and it is well-established that the SEC can obtain equitable relief to prevent asset dissipation during litigation. *See, e.g.*, *SEC v. PlexCorps*, No. 17 Civ. 7007, 2018 WL 3038500, at *3 (E.D.N.Y. June 19, 2018) (ordering additional asset freeze post-filing in light of continued dissipation). Such equitable remedies set the SEC apart from a private plaintiff, whose primary monetary remedy is damages. *SEC v. Wencke*, 622 F.2d 1363, 1368 (9th Cir. 1980). In addition, the SEC has to anticipate Defendants' defenses, which may include a claimed inability to pay a reasonable civil penalty. *See SEC v. Jasper*, 883 F. Supp. 2d 915, 931-32 (N.D. Cal. 2010).

The cases cited by Defendants are either irrelevant, *see Collins & Aikman Corp.*, 256 F.R.D. at 414 (document requests directed at the SEC), or readily distinguishable, *see JUM Global, LLC*, 2018 WL 4520981, at *1-2 (seeking 17 months of records when only one invoice alleged to be fraudulent); *Koh*, 2011 WL 940227, at *3 (seeking financial records to show when plaintiff purchased glass cleaner to prove he "did not care about these products before filing this action").

*Second*, Defendants contend that the Subpoenas are "duplicative" of records that the SEC previously subpoenaed in its investigation. This argument is specious. None of the Subpoena recipients has raised any duplication or burden objection, and "[a] party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object." *Kremen v. Cohen*, No. 11 Civ. 5411 (LHK, HRL), 2012 WL 2277857, at *3 (N.D. Cal. June 18, 2012) (quotation marks omitted).

In any event, the requests are not duplicative. The SEC did not previously request accounts for Amplicon or Petrichor from Bank of America or JP Morgan Chase Bank, and it did not request Defendants' account records after December 2019 from those institutions. The SEC is also entitled to obtain records directly from the banks in order to readily establish their authenticity, which is a fundamental purpose of civil discovery. (Any suggestion that the SEC improperly used "update" letters to obtain records is wrong. Certain financial records were provided to the SEC by the U.S. Attorney's Office for the Northern District of California.)

Defendants maintain their "duplication" argument is about relevancy rather than undue burden. But financial records for the time period of the fraud are clearly relevant, and, as explained above, records for the time period after Defendants left uBiome are relevant, too. To the extent Defendants are instead seeking a protective order, they must show "good cause." *See* Fed. R. Civ. P. 26(c)(1). They therefore "must first state with specificity that the information sought will cause harm or prejudice if the protective order is not granted." *Bryant v. Mattel, Inc.*, No. 04 Civ. 9049, 2010 WL 11463910, at *5 (C.D. Cal. July 8, 2010) (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)). But there is no harm to Defendants if the SEC obtains "duplicates" of records it already has.[4]

At core, Defendants are trying to conceal their financial transactions, which may show past and ongoing dissipation of assets through overseas transfers. The SEC's proposed compromise has been to provide Defendants with the relevant bank and brokerage records without waiting for discovery requests. To that end, the SEC has (1) identified those records in its initial disclosures on October 7, 2021, and (2) produced those records, and the bank records provided by the U.S. Attorney's Office, to Defendants on October 12, 2021. Defendants' motion should be denied.

---

[4] As part of its initial disclosures, the SEC produced bank and brokerage records to Defendants on October 12, 2021. Defendants complain that they need time to review those records, which would further delay the SEC's efforts to identify any ongoing asset dissipation. But the SEC had already identified the records in its initial disclosures as well as described them in earlier emails and during a meet-and-confer, which provided Defendants with sufficient information to assess their "duplication" claim. More importantly, the produced records have no bearing on Defendants' "relevancy" claim regarding the more recent bank records sought by the Subpoenas.

By:/s/ Joel M. Hammerman

JOEL M. HAMMERMAN (Pro Hac Vice)
JOSHUA P. MAHONEY (Pro Hac Vice)
SOPHIE H. GOTLIEB (Pro Hac Vice)
TARIFA LADDON (Cal. Bar No. 240419)
**FAEGRE DRINKER BIDDLE & REATH,
LLP**
1800 Century Park East, Suite 1500
Los Angeles, California 90067

*Attorneys for Jessica Richman*


By:/s/ W. Douglas Sprague

W. DOUGLAS SPRAGUE (Cal. Bar No. 202121)
DAVID JUNG (Cal. Bar No. 314508)
RAINA BHATT (Cal. Bar No. 319435)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533

*Attorneys for Zachary Apte*

By:/s/ David Zhou

BERNARD B. SMYTH
THOMAS J. EME
DAVID ZHOU
**SECURITIES AND EXCHANGE
COMMISSION**
44 Montgomery Street, Suite 2800
San Francisco, CA 94104

*Attorneys for SEC*

6